The STATE of Ohio, Appellee,

v.

CHAPMAN, Appellant.

[Cite as *State v. Chapman* (1994), 97 Ohio App.3d 687.]

Court of Appeals of Ohio,
Hamilton County.

No. C–930622.

Decided Sept. 7, 1994.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Gwendolyn M. Schratt,* Assistant Prosecuting Attorney, for appellee.

*J. Robert Andrews,* for appellant.

Marianna Brown Bettman, Judge.

In response to information from a confidential informant about drugs and a sawed-off shotgun, Cincinnati Police Officers Sneed and Ingram, who were assigned to the "street corner unit," went to an apartment at 1827 Baltimore to ask some questions. Two uniformed officers were with them at the time. Officer Sneed knocked on the door and was invited in by "a guy in the kitchen," who said, "Come in, they are in the back." Once inside the door, Sneed identified herself as a police officer. Her partner and one uniformed officer went straight to the back of the apartment and into the room of Scott Chapman, appellant herein ("appellant"). Sneed asked the man who let them in, whose name was Troy, if he was the owner of the property. Troy stated that he was not the owner and that Charlie Chapman ("Chapman") owned the property. Appellant is Chapman's son. At Sneed's request, Troy went and got Chapman, who signed a consent-to-search form. Appellant's room was then searched, and two sawed-off shotguns and some drug paraphernalia were recovered. Appellant was arrested. He was subsequently indicted for two counts of possession of dangerous ordnance.

Appellant filed a motion to suppress the guns, which the trial court denied. He pleaded no contest to the charges and was found guilty. Appellant timely appealed, raising two assignments of error for our review. In the first assignment, he argues that the trial court erred in failing to grant his motion to suppress the evidence taken from his room. In the second assignment, he argues that the court erred in failing to suppress statements he made while in custody before he had been properly advised of his Fifth Amendment rights. We have *sua sponte* removed this case from the accelerated calendar and placed it on the court's regular calendar.

In his first assignment of error, appellant contends that the trial court erred in failing to grant his motion to suppress the evidence seized from his room. He argues that the evidence should have been suppressed because the police entry into the apartment was unauthorized, his father's consent to search was not voluntarily given, and his father had no authority to authorize a search of his room.

It is undisputed that the officers were invited into the apartment by Troy, a man who the state failed to prove was anything more than a gratuitous visitor. The officers did not attempt to find out whether Troy had any kind of authority, apparent or otherwise, to let them in. It is also undisputed that Officer Ingram was already in appellant's room before Chapman gave his consent to search the premises. In analyzing this case, we believe a distinction must be made between consent to enter and consent to search. *State v. Pamer* (1990), 70 Ohio App.3d 540, 591 N.E.2d 801. This distinction is not always carefully made. See 3

LaFave, Search and Seizure (2 Ed.1987) 309–311, Section 8.5(e). We also believe the purpose of the police in going to the residence must be scrutinized. Here, the officers admitted that they did not have probable cause for a search warrant, and were going to the Chapman residence merely to ask some questions.

Turning first to the consent to enter, we find the state's reliance on *Illinois v. Rodriguez* (1990), 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148, to be misplaced in that the *Rodriguez* court held that a warrantless entry is valid when based upon the consent of a third party whom the police, at the time of entry, reasonably believe to possess common authority over the premises, but does not.

Unlike the police officers in *Rodriguez,* the police officers in the instant case had no knowledge about Troy at the time of entry, and made no attempt before coming in to determine whether Troy had any authority over the premises, and hence any authority to admit them. However, we agree with the court in *Akron v. Harris* (1994), 93 Ohio App.3d 378, 638 N.E.2d 633, that where the intent of the officers was not to conduct a search, but only to question a resident, the consent of a third party to enter the house should not be held to the same standard as the consent of a third party to a warrantless search of the house. Using a standard of reasonableness, we find nothing inappropriate about the police's entering an apartment after hearing a voice say "come in," especially where the officers immediately identified themselves as police officers and did not try to trick, threaten, or force their way into the residence. Compare *State v. Pi Kappa Alpha Fraternity* (1986), 23 Ohio St.3d 141, 23 OBR 295, 491 N.E.2d 1129, certiorari denied (1986), 479 U.S. 827, 107 S.Ct. 104, 93 L.Ed.2d 54. In the colorful words of the United States Court of Appeals for the Ninth Circuit in *Davis v. United States* (C.A.9, 1964), 327 F.2d 301, 304:

"Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal *per se,* or a condemned invasion of the person's right of privacy, for anyone openly and peaceably, at high noon, to walk up the steps and knock on the front door of any man's 'castle' with the honest intent of asking questions of an occupant thereof—whether the questioner be a pollster, a salesman, or an officer of the law." See, also, *People v. Shaffer* (1982), 111 Ill.App.3d 1054, 67 Ill.Dec. 612, 444 N.E.2d 1096; *State v. Williams* (Jan. 24, 1994), Clermont App. No. CA93–07–053, unreported, 1994 WL 18157.

We note, however, that giving consent to enter does not thereby bestow consent to search the premises. *Lakewood v. Smith* (1965), 1 Ohio St.2d 128, 30 O.O.2d 482, 205 N.E.2d 388; *Columbus v. Copp* (1990), 64 Ohio App.3d 493, 581

N.E.2d 1177. Unlike most cases analyzing this issue, in the instant case consent to enter and consent to search were given by two different people.

■ In the absence of any knowledge of who has admitted them, it is unreasonable for the police to do anything more than stand inside the door until the extent of the authority of the person who invited them in can be ascertained, or until the owner or someone with authority over the premises can be located. This is especially so because warrantless entries, like warrantless searches, are not favored in the law. *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639; *Illinois v. Rodriguez, supra.* Therefore, we first hold that while the officers' entry into the apartment was not improper, consent to enter under these circumstances was extremely limited. It was wrong for the officers immediately to go back to appellant's room without first determining whether Troy had any authority over the premises or until Chapman gave them permission to move around the apartment.

■ Notwithstanding our holding, we conclude that this unauthorized movement into the back of the apartment did not invalidate the search of appellant's room and the seizure of the guns. Unlike the *Rodriguez* case, nothing seized from appellant's room was in plain view. The police did not conduct a search or seize any property before obtaining the owner's consent to search. Both officers testified that no search of appellant's room was even attempted until Chapman had been located and had voluntarily signed a consent-to-search form. Ingram testified that he did not begin the search of appellant's room until Sneed had shown him the consent-to-search form signed by Chapman.

■ Chapman did not ask the officers to leave, nor did he suggest to them that their presence was unauthorized or unwanted. He took no steps to revoke or countermand the entry permitted by Troy. He took no action inconsistent with a permissive entry. Compare *Middleburg Hts. v. Theiss* (1985), 28 Ohio App.3d 1, 28 OBR 9, 501 N.E.2d 1226. He placed no limitations on the consent to search. As to the voluntariness of the consent to search, the form which Chapman signed clearly states that he had the right to refuse to consent to a search. This is, of course, only one factor for the court to consider. Whether consent to search is voluntary is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854; *State v. Posey* (1988), 40 Ohio St.3d 420, 427, 534 N.E.2d 61, 67, certiorari denied (1989), 492 U.S. 907, 109 S.Ct. 3217, 106 L.Ed.2d 567; *State v. Jones* (June 29, 1994), Hamilton App. Nos. C–930300 and C–930301, unreported, 1994 WL 287728. The trial court heard conflicting testimony on this subject from Chapman and the police officers and decided that based on the totality of the circumstances the consent was voluntarily given. Matters of

weight and credibility are for the trier of fact, including at suppression hearings. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus; *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 57–58, 437 N.E.2d 583, 584. We cannot say that this determination was contrary to law or against the weight of the evidence. For similar reasons appellant's argument that his father did not have authority to consent to a search of his room must fail. While Chapman told the court that his son paid rent to him and had a separate room with a lock, the police testified that Chapman told them that appellant did not pay rent and that they recalled no locks on appellant's door. We will not disturb the trial court's decision to believe the police officers. Conflicts in the evidence are for the trier of fact to resolve. *State v. DeHass, supra.* Thus appellant's first assignment of error is overruled.

Appellant's second assignment of error, alleging that incriminating statements which he made in his room should have been suppressed because he had not been properly advised of his rights, is also overruled. It is uncontradicted that appellant was given the *Miranda* warnings orally while detained at home, was readvised of those rights once in custody and signed a written waiver of his rights at the Hamilton County Justice Center. He presented no evidence to show that his statements were involuntary. This assignment lacks merit. See *State v. Williams* (Mar. 17, 1993), Hamilton App. No. C–920258, unreported, 1993 WL 74779.

Therefore, the decision of the trial court overruling appellant's motion to suppress was not erroneous, and the judgment of conviction is affirmed.

*Judgment affirmed.*

HILDEBRANDT, P.J., and SHANNON, J., concur.