DECISION
Defendant-appellant, John B. Duty, appeals from a judgment of the Franklin County Municipal Court denying his motion to suppress and to dismiss, and finding him guilty of attempted child endangering in violation of Gahanna City Ordinance Section 537.07(A). Defendant assigns a single error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED IN VIOLATION OF THE FOURTH AMENDMENT.
According to the evidence the city presented at the hearing on defendant's motion to suppress, on May 18, 1998, Officer Norman Monroe of the Gahanna Police Department went to defendant's house on a high grass complaint. As he approached the house to inquire about the grass, he noticed the main door of the house was open anywhere from five to six inches. Inside the house, a young man was sitting on the sofa and watching television. Norman knocked on the door and the young man, later identified as defendant's eighteen-year-old nephew, said, "Come on in." (Tr. 7.) Norman then "knocked on the door. I pushed the door slightly open, and I identified myself and told him why I was there and asked him if he was the owner of the home or the leaseholder, or was this his house. He stated no, it belonged to his uncle." (Tr. 8.)
At that point, Norman was right inside the entryway of the residence, and could see the living room of the home. He saw cockroaches falling onto his shoulders, his helmet and his head, "baby bottles and stuff" lying around, an "unbelievably stained" carpet, and a rusted serrated steak knife with molded food on it. The officer estimated that literally hundreds of thousands of cockroaches were crawling on the ceiling, walls, and the floor. He described what he saw as "absolute filth" and "stench." (Tr. 11.)
At his nephew's call, defendant came from the bedroom with an infant child. The child's diaper was so urine-stained it was as yellow as a folder. (Tr. 12.) The officer informed defendant of the reason for the officer's presence. Defendant did not ask the officer to leave.
At that point the officer initiated his search of the house "for everyone's safety." (Tr. 14.) He went into the kitchen, where he observed uneaten food covered in mold. Feces was lying on the floor; clothes in another room were stacked knee-deep, molded and mildewed. In every room cockroaches were crawling. Ultimately, Norman called other officers to help him conduct his search. The bedrooms had no beds for any of the children. The parents' bedroom had a baby crib, but it had cockroaches crawling in and out of the pillowcase.
As a result of the officer's encounter at defendant's home, defendant was charged with endangering children. Defendant filed a motion to suppress the evidence and to dismiss, and, following a hearing, the trial court denied the motion. Defendant entered a no contest plea to attempted child endangering. The trial court found defendant guilty and sentenced him accordingly.
In his single assignment of error, defendant contends Officer Norman violated his Fourth Amendment rights under the United States Constitution by searching defendant's house without a warrant or the requisite consent.
The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. Where persons hold a subjective expectation of privacy, a valid warrantless search must fall within a judicially recognized exception of the warrant requirement. Ohio State Dept. of LiquorControl v. Fraternal Order of Eagles Aerie 2293 (1996), 112 Ohio App.3d 94,97, citing Katz v United States (1967), 389 U.S. 347.
The prohibition against unreasonable intrusions does not apply to situations in which voluntary consent is obtained, either from the individual whose property is searched or from a third party possessing common authority over the premises. State v.Asworth (Apr. 11, 1991), Franklin App. No. 90AP-916, unreported (1991 Opinions 1702), quoting Illinois v. Rodriguez (1990),111 L.Ed.2d 148, 156; see, also, City of Columbus v. I.O.R.M,, SiouxTribe-Redman Club (1993), 88 Ohio App.3d 215, citing United Statesv. Matlock (1974), 415 U.S. 164, 171 (holding common authority rests on "mutual use of the property by persons generally having joint access or control for most purposes"). Here, the state draws a further distinction between consent to search and consent to enter. With that dichotomy drawn, the state contends consent to enter was given to Officer Norman, and once he was lawfully on the premises, a warrantless search was justified pursuant to the "plain view" exception to the warrant requirement.
The Ohio Supreme Court recognizes a distinction between consent to enter and consent to search: "[a] person who admits a police officer to his premises in compliance with the officer's request for an interview does not thereby waive his constitutional immunity from unreasonable searches, nor does he thereby consent to a search of the premises." City of Lakewood v. Smith (1965),1 Ohio St.2d 128, paragraph one of the syllabus.
Thus, where officers enter the premises to question a resident rather than to search the premises, the consent of a third party to enter the house should not be held to the same standard as consent of a third party to a warrantless search of the house. State v. Chapman (1994), 97 Ohio App.3d 687. Utilizing a reasonableness standard, the court in Chapman held that the officer's entry into the apartment did not violate theFourth Amendment even though the consent to enter was given by a third party: "[u]sing a standard of reasonableness, we find nothing inappropriate about the police's entering an apartment after hearing a voice say `come in,' especially where the officers immediately identified themselves as police officers and did not try to trick, threaten, or force their way into the residence."Id. at 690.
Here, the officer was initially on the premises to investigate a high grass complaint, not to search the premises. He approached the slightly opened main door, knocked, and heard a voice say "come on in." On entering, he initially remained in the entryway. Norman acted reasonably under the circumstances.
Once lawfully inside the premises, the "plain view" exception became applicable, and allowed Norman to seize items in plain view, discovered and recognized during the course of lawful activity. To fall within the plain view exception, the item seized must (1) be in the plain view of authorities lawfully on the premises, (2) readily exhibit its criminal nature, and (3) be located in a place to which authorities lawfully have access. FOEAerie 2293, supra, at 98. Nonetheless, in "the absence of any knowledge of who has admitted them, it is unreasonable for the police to do anything more than stand inside the door until the extent of the authority of the person who invited them in can be ascertained." Chapman, supra, at 691.
Here, the "plain view" doctrine allowed Officer Norman to observe the living room of defendant's house and the conditions he found there. Because, however, consent to enter did not necessarily grant consent to search, Norman's search of the rest of the home, including the request for other officers to assist in the search, arguably violated defendant's rights under theFourth Amendment. See Columbus v. O'Hara (Aug. 28, 1986), Franklin App. No. 85AP-1036 (1986 Opinions 2267), unreported. We need not resolve that issue, however, as the evidence Norman properly observed in the living room is sufficient to support defendant's conviction for endangering children.
For the foregoing reasons, defendant's single assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
DESHLER and KENNEDY, JJ., concur.