OPINION
Appellant, Ernest Casey, appeals from his conviction in the Miami County Common Pleas Court of Involuntary Manslaughter and Aggravated Vehicular Assault pursuant to his no contest pleas.
On April 15, 1999, in the early evening hours Gertrude Motsch and Kent Lyon were riding bicycles on Walnut Grove Road in eastern Miami County when they were struck by a motor vehicle. Gertrude Motsch died as a result of her injuries and Kent Lyon was seriously injured. The vehicle that had struck the cyclists left the scene of the accident. Debris recovered from the accident scene by Deputy Miami County Sheriff David Eshelman revealed that the suspect vehicle was a maroon 1987 Ford pick-up truck. Eshelman recovered an amber lens with Ford 1987 stamped on it as well as a piece of air dam commonly found on 1987 Ford pick-up trucks. Eshelman also found a small maroon paint chip on one of the bicycles. Eshelman knew that dark maroon was a popular Ford color.
On April 16, 1999, Deputy William Pittman of the Clark County Sheriff's Department was advised to be on the lookout for a full size maroon or red Ford F-150 pick-up truck, being a late 80's or early 90's model, with right front end damage. Deputy Pittman knew that Walnut Grove Road becomes Marcourt Road when it enters Clark County and knew that there were several trailer parks on Marcourt Road. Deputy Pittman drove through Brookwood Mobile Home Park looking for a pick-up truck with front end damage. Pittman noticed a red Ford F-150 pick-up truck with front end damage in the driveway at 3432 Michelle Drive, which is the residence of Ernest Casey. Deputy Pittman thereafter contacted his supervisor and the Miami County Sheriff's Department to advise of what he had found. Deputy Pittman further observed Casey cleaning the truck. Deputy Pittman approached Casey and engaged him in conversation. Detective Lieutenant Garman of the Clark County Sheriff's Department was summoned to the residence.
Officer Pittman testified he explained to Casey why they were at his home. Pittman said he told Casey about the fatal accident in Miami County and told him the suspect vehicle was similar to Casey's. Pittman asked Casey about the damage to Casey's truck and Casey replied he had hit a mailbox with his vehicle.
Pittman testified that he asked to see Casey's driver's license and Casey told Pittman his license had been suspended. Pittman said he secured a written consent to search Casey's truck. The consent form authorized Deputy Pittman and Sergeant Garman "and any other officers of the Clark County Sheriff's Department" to search Casey's vehicle and photograph it. Pittman said Sergeant Russell Garman of the Clark County Sheriff's office then searched the defendant's vehicle for trace evidence.
Garman testified he searched defendant's truck and recovered paint scraping and human tissue and hair from the outside of the vehicle. Garman also said he photographed the truck.
Garman then called the Miami County Sheriff, and the officers waited about 45 minutes before the Miami County authorities arrived. During that time, the officers waited outside, while appellant waited inside his trailer. (Tr. 21-22).
When Officers Ray and Galey from Miami County arrived, they first conferred with the Clark County officers. (Tr. 84). The Miami officers could see the damage to the truck, and they also saw red paint on one of the wheels. (Tr. 57). Garman told the Miami officers that appellant had said that he'd hit a mailbox and had not driven the truck in the three weeks since the accident. (Tr. 58).
The officers then knocked on appellant's door and he consented to their entering the house. (Tr. 23, 85). Appellant agreed to speak with the officers, and prior to doing that, he signed an interview form. (Tr. 60, 61). Officer Ray asked appellant if he had been at the AMVETS Club on LeFevre Road. Appellant replied that he thought he had drunk a beer there, but he could not remember exactly. (Tr. 62). Shortly after that, appellant told the officers that he wanted to speak to a lawyer. (Tr. 63).
Officer Eshelman was called to appellant's house. Eshelman looked at Casey's truck and saw broken lamps, red paint on a tire that matched that of one of the bikes and white paint on a bumper. Eshelman on close inspection saw a fabric pattern in the reflective material in back of a lens on the truck. By looking under a truck bumper Eshelman was able to see a broken air dam that matched a piece of the same thing he found at the scene of the accident. When he looked at the truck, he determined that the truck damage was consistent with the damage at the scene of the accident. Based on that determination, Eshelman decided to have appellant arrested. He also decided to tow the vehicle to Miami County. The officers then sealed it and searched it after the search warrant issued on April 19.
Prior to trial, Casey moved to suppress the evidence obtained as a result of the search of his vehicle by Officer Eshelman on the basis he was not one of the officers authorized to search his vehicle in the written consent given by him. Casey also moved to suppress any evidence found during the execution of the search warrant for the reasons that it was tainted by the illegal search conducted by Officer Eshelman.
In overruling the motion the trial court gave the following explanation:
 The defendant gave the Clark County officers verbal consent to search his truck. This was followed up shortly thereafter by a written consent to search filled out by Officer Pittman. In the written consent, Officer Pittman filled in his name and Sgt. Garman, the only two officers on the scene at that time. The form also includes the language, ______ "and other officers of the Clark County Sheriff's Department."
 The arresting officer, Eshelman from Miami County, arrived on the scene later and also looked at the outside of the truck, which was in plain view on the defendant's property.
 The defendant argues since the written consent was specific, Eshelman's search was beyond the scope granted by the defendant.
 Actually it was Pittman who filled in the written form, not the defendant. The defendant did not present any evidence he intended to limit the consent to search to the two Clark County officers on the scene.
 The defendant would ask the Court to infer such a limitation based upon what Officer Pittman wrote. The Court declines to make such an inference. It would be logical if the defendant asked all the officers to leave his property and not to look at his truck. But this did not happen and the defendant's hair-splitting argument is a matter of form over substance. The defendant freely and voluntarily consented to the search of his truck and he did not limit or withdraw such consent. Argument 1 is rejected.
The scope of a consent search is limited by the bounds, and determined by the breadth, of the actual consent itself. The requirement of a warrant is waived only to the extent granted by the defendant in his consent. United States v. Dichiarinte
(1971), 445 F.2d 126. A suspect may delimit as he chooses the scope of the search to which he consents. Florida v. Jimeno
(1991), 500 U.S. 248, at 252.
In this case Miami County Deputy Eshelman was clearly not one of the officers given authority to search by the defendant in the written consent. The trial court overruled the suppression motion because the court noted that it was Officer Pittman who filled in the written forms and the defendant did not present any evidence he intended to limit the consent to search to the two Clark County officers.
We fail to see the relevance of who filled in the form. The written consent given was limited to the Clark County Sheriff's Department. The trial court erred in determining that Eshelman's search of defendant's vehicle was consensual. Assuming Eshelman was engaged in an unlawful search, the evidence he observed would not have to be suppressed if it would have been inevitably discovered. Nix v.Williams (1984), 467 U.S. 431; State v. Perkins (1985), 18 Ohio St.3d 193.
Officer Pittman testified that as he sat in his cruiser he could see that the front fender of the defendant's truck "appeared to be dented in." (Tr. 10). Pittman said he then went between the defendant's property and his neighbor's property, took a photograph of the truck, and then called Sergeant Garman.
Clearly, we agree with the trial court that Pittman's observations from these vantage points could not be characterized as "searches" but open observations of an area within the curtilage. California v. Ciraolo (1986), 476 U.S. 207, 213. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. Katz v.United States (1976), 389 U.S. 347.
After observing the dented truck matching the description of the suspect vehicle, it was perfectly reasonable for Pittman and Garman to have knocked on the defendant's door to inquire further. Police are privileged to go on private property when in the proper exercise of their duties. State v. Chapman (1994), 97 Ohio App.3d 687;United States v. Hersh (C.A. 9, 1972), 464 F.2d 228, 230.
Sergeant Garman testified that while he was explaining to the defendant why he wanted to talk to him, he noticed red paint on the outer side of the right front tire of the defendant's truck. (There was testimony that one of the victim's bicycle was red and the other victim's was white).
After the defendant executed the consent to search form, Garman said he scraped the red paint off the tire and he collected what appeared to be human skin off the front light lens and hair from the right rear bed of the truck.
Officer Eshelman testified as follows:
 Excuse me. I went out there, um, met with Deputy Pittman and he came out of the trailer to meet me when I pulled up because he didn't know who I was. Um, Detective Ray came out and I saw the truck and right away observed damage which was very consistent with what I was looking for. The same lamps were broken, the truck was the same color as the paint chip I found, uh, there was red paint on the tire of the truck, there was white paint on the bumper of the truck, uh, and in fact looking close at the truck there's a reflective material in back of the lens which makes your lights brighter, there was fabric, a fabric pattern in that reflective material from pressure.
Okay. What about your little wind thing underneath there?
 And, yeah, the piece that I found, uh, the air damn was the same size and I knew it fractured match just from looking at it. It was broken perfectly the same oval shape.
The defendant does not contend that Officer Eshelman was not lawfully on the defendant's premises when he made the observations of which he testified. Objects falling in the plain view of an officer who has a right to be in the position to have the view are subject to seizure. Harris v. United States (1968), 390 U.S. 234. In this case, Eshelman viewed the incriminating evidence while standing in the defendant's driveway, but he did not seize any evidence until the search warrant was executed. (Tr. 129).
Even if we assume Officer Eshelman's observations particularly from under defendant's vehicle could be termed a "search" and were thus inadmissible in evidence, it is clear that his observations were not necessary for the Miami County authorities to have obtained the search warrant they later received. The evidence Eshelman observed would have inevitably been discovered when the search warrant was executed. Accordingly, the assignment of error is overruled.
The judgment of the trial court is Affirmed.
 _________________ BROGAN, J.
WOLFF, J., and FAIN, J., concur.