DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Perrysburg Municipal Court which denied the motion to suppress filed by appellant, Kenneth R. Schroeder. For the reasons that follow, we affirm the decision of the trial court.
On or about June 3, 2000, appellant was charged with one count of possession of drug paraphernalia, in violation of R.C. 2925.14, a misdemeanor of the fourth degree, and one count of cultivation of marijuana, in violation of R.C. 2925.04, a minor misdemeanor. Appellant filed a motion to suppress on August 17, 2000. Following an evidentiary hearing on September 22, 2000, the trial court denied appellant's motion in an October 20, 2000, decision and judgment entry. Thereafter, appellant pled no contest to both charges, was found guilty and sentenced.
Appellant timely appeals the decision of the trial court and raises the following sole assignment of error:
 "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY DENYING HIS MOTION TO SUPPRESS, AS THE EVIDENCE AGAINST HIM WAS OBTAINED IN VIOLATION OF HIS RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION FOURTEEN OF THE CONSTITUTION OF THE STATE OF OHIO."
This matter arises as a result of a warrantless entry into an apartment. Officers Mark Skala and Todd Kitzler, of the Rossford Police Department, independently responded to a report of domestic violence. There was no indication prior to their arrival that drugs may be present. Upon arriving at the apartment, Skala testified that he and Kitzler "stood outside the door to listen to what was going on inside the apartment" for a minute or two. Skala heard a lot of screaming and yelling regarding living arrangements and the possibility of one of them being pregnant. Skala testified that he knocked on the door and identified himself. Minde Shank opened the door, crying and upset.
According to both officers, Kitzler asked Shank to step out so he could speak with her regarding the domestic matter. Both officers testified that in domestic situations they try to separate the two parties to determine what happened. Kitzler took Shank a few feet down the hallway outside of the apartment. Skala testified that he could not see anyone else in the apartment until he stepped inside the doorway. Skala stated that he stood a couple of feet inside the doorway, in the short hallway that enters into the living room area, to speak with Noah Swope. According to Skala, Swope was in the living area, approximately five to six feet away from Skala. Skala testified that Swope did not tell him to leave the apartment or in any way object to him being inside. Skala also testified that Shank did not object to Skala entering the apartment when she exited with Kitzler. Skala testified that he used no force to enter and that he did not announce he was coming in no matter what.
Skala testified that Swope stated it was only a verbal argument. To determine whether any violence had occurred, Skala testified that he looked for signs of violence on Swope's person and in the apartment, such as broken furniture. While immediately inside the apartment discussing the domestic situation with Swope, Skala observed drug paraphernalia. Once Kitzler returned with Shank, who, according to Kitzler, led Kitzler into the apartment, both officers walked into the living room area of the apartment to talk with Shank and Swope. The officers determined that there were no signs of violence. According to both officers, at no time did Swope or Shank ask the officers to leave.
Skala testified that once he was further into the apartment, he saw even more drug paraphernalia. Kitzler also testified that every table had some type of drug paraphernalia on it. It was not until this time that Kitzler addressed the situation of the living arrangements to determine the owner of the property. Swope and Shank stated that the property belonged to the people that lived there and that they were staying there only temporarily. They both denied having smoked any marijuana. According to the officers, Swope and Shank voluntarily left the apartment with Kitzler. Skala stayed in the doorway of the apartment and called for Detective Hudak to come out to get a search warrant.
In addition to the items he saw in plain view, Skala testified that when the door was opened, "there was a very strong smell of marijuana that was coming from the apartment." Kitzler confirmed the strong odor of burning marijuana. After obtaining a search warrant, based on what was in plain view, the officers searched the apartment and seized the drug paraphernalia and marijuana plant they found. Appellant was charged as a result of the items recovered.
Shank's and Swope's testimony was markedly different than the officers' testimony regarding which officer entered the apartment at what point and who talked to Shank in the hallway. More importantly, however, Shank and Swope testified that Shank answered the door, Kitzler asked to come in, Shank told him no because she did not have any authority to allow the police to come in, and that Swope came up behind Shank and also told the officers they could not come in. According to Swope, after Shank was taken from the apartment, Kitzler walked past Swope and into the center of the living room and told Swope to sit on the couch. Although Shank and Swope testified that they objected to the officers' entry, as the finder of fact, the trial court found Shank's and Swope's testimony was not credible, insofar as their testimony was "sharply conflicting."
When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of a witness.[1] This court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.[2] Applying those facts, we must then independently determine as a matter of law whether the facts meet the appropriate legal standard.[3]
The Fourth Amendment to the United States Constitution protects persons from unreasonable searches and seizures. The United States Supreme Court has held that the police may enter a premises without a warrant based upon the consent of a third party whom the police reasonably believe possesses common authority over the premises.[4] There is a recognized difference between consent granted to the police to enter a house to conduct an interview and consent granted to conduct a search.[5] The consent of a third party granted to the police to enter a house is not held to the same standard as consent of a third party to a warrantless search.[6] Moreover, consent to enter can be expressed or implied, such as opening a door and stepping back, or leading an officer through an open door and not expressing that he should not follow.[7]
In addition to consent being a valid basis for a warrantless entry, the Ohio Supreme Court has held that a warrantless entry is justified where the police reasonably believe that it is necessary to investigate an emergency threatening life and limb:
 "Exigent circumstances justify a warrantless entry into a residence by police when police are there pursuant to an emergency call reporting domestic violence and where the officers hear sounds coming from inside the residence which are indicative of violence."[8]
Under the facts and circumstance of this case, we find that the officers' actions were reasonable. Disregarding Shank's and Swope's testimony, insofar as the trial court found it not to be credible, we find that Skala and Kitzler were responding to a call reporting domestic violence. Upon arriving at the scene, the officers heard a heated argument. Shank answered the door crying and upset. Following standard procedure, Shank was removed into the hallway to separate her from the occupant within the apartment, who could not be seen from the door. Leaving the doorway, Shank made no objection to having an officer enter the apartment to speak with Swope. In investigating the alleged domestic violence, Skala stepped through the door to make contact with Swope and assess the situation further. Swope, who was standing further within the apartment, made no objection to this entry. We find that this entry was reasonable under the circumstances insofar as Swope could not be seen from the door and it was necessary to establish contact with him because he was a party to a suspected domestic violence situation. This entry was no broader than was necessary to effectuate the purpose of the entry, which was to question Swope regarding potential domestic violence. Upon making this reasonable entry, drug paraphernalia was immediately within view. Thereafter, Shank returned to the apartment and led the officers into the interior of the apartment. The officers' entry into the living room was clearly with Shank's implied consent. At this point, even more drug paraphernalia was seen by both officers.
Accordingly, we find that the trial court properly held that the officers were lawfully present within the apartment and that the probable cause for issuance of the search warrant was properly based upon the items of drug paraphernalia that were in "plain view."[9] As such, we find the trial court correctly denied appellant's motion to suppress the evidence seized within the apartment. Appellant's sole assignment of error is therefore found not well-taken.
On consideration whereof, we find that the judgment of the Perrysburg Municipal Court is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., James R. Sherck, J., Richard W. Knepper, J., JUDGES CONCUR.
[1] State v. Smith (1997), 80 Ohio St.3d 89, 105; State v. Fanning
(1982), 1 Ohio St.3d 19, 20.
[2] State v. Davis (1999), 133 Ohio App.3d 114, 117.
[3] State v. Klein (1991), 73 Ohio App.3d 486, 488.
[4] Illinois v. Rodriguez (1990), 497 U.S. 177, 181.
[5] City of Lakewood v. Smith (1965), 1 Ohio St.2d 128, paragraph one of the syllabus.
[6] State v. Chapman (1994), 97 Ohio App.3d 687, 690.
[7] State v. Asworth (Apr. 11, 1991), Franklin App. No.
90AP-916, unreported, citing, United States v. Turbyfill (C.A.8, 1975),525 F.2d 57, and United States v. Perez (C.A.1, 1980), 625 F.2d 1021.
[8] State v. Applegate (1994), 68 Ohio St.3d 348, syllabus.
[9] State v. Halczyszak (1986), 25 Ohio St.3d 301, 303.