OPINION
In this accelerated calendar appeal submitted on the briefs of the parties, appellant, Michael P. Dwyer, challenges the final judgment of the Mentor Municipal Court, finding him guilty of driving under the influence of alcohol after his motion to suppress was denied. For the reasons that follow, the judgment of the trial court will be affirmed.
The following facts were adduced at the suppression hearing. On January 9, 2001, Officer Chris Pattie ("Officer Pattie") of the Mentor Police Department was traveling westbound on Mentor Avenue in the left lane when he observed appellant, also traveling westbound in the left lane, having difficulty remaining in his lane. Officer Pattie followed appellant for approximately a quarter of a mile. During this time, the officer observed appellant's vehicle drift from the left lane into the right lane approximately a foot, return to the left lane, then go left of center about a foot over the double yellow lines. Upon returning to the left lane, appellant's vehicle drifted into the right lane several more times.
However, appellant testified to a different set of facts. According to him, he remained in the left lane the entire time and never drifted into the right lane. Appellant further attested that Joseph Bucar ("Mr. Bucar"), a friend of his for seven or eight years, was driving behind him in the left lane on Mentor Avenue. In fact, Mr. Bucar confirmed that he was driving 40-50 feet behind appellant for approximately a quarter of a mile, and that he did not observe appellant drift into the right lane or cross the double yellow lines.
In contrast, Officer Pattie stated that he was unable to recall whether there was another vehicle between himself and appellant. According to the him, he had a clear view of appellant's vehicle, and there was nothing impeding his view.
As a result of observing appellant repeatedly cross marked lanes in a short distance, Officer Pattie initiated a stop of appellant's vehicle. After approaching the vehicle, the officer spoke with appellant and explained to him that he was being stopped because "he was having trouble staying in his lane." During this inquiry, Officer Pattie noticed a slight odor of alcohol on appellant's breath, that his eyes were bloodshot and glassy, and that his speech was slightly slurred. The officer then administered several field sobriety tests, including the horizontal gaze nystagmus ("HGN") test, the walk and turn test, and the one-legged stand test.
Appellant performed poorly on the field sobriety tests.[1] As a result, he was arrested for operating a vehicle while under the influence of alcohol and/or drugs, in violation of R.C. 4511.19(A)(1); operating a vehicle with a prohibited concentration of alcohol of .178, in violation of R.C. 4511.19(A)(3); and improperly leaving marked lanes, in violation of R.C. 4511.33.
After entering a plea of not guilty to the charges, appellant filed a motion to suppress the evidence against him. Following a hearing, the trial court denied this motion.[2] Thereafter, appellant entered a plea of no contest and was found guilty of operating a vehicle while under the influence of alcohol and/or drugs, in violation of R.C. 4511.19(A)(1).[3]
Appellant's sentence was stayed pending the outcome of this appeal.
It is the denial of his motion to suppress from which appellant appeals, submitting the following assignments of error for our consideration:
 "[1.] The trial court erred in denying appellant's motion to suppress evidence because the officer did not have a reasonable basis for suspicion and thus lacked the authority to initiate the stop and, by making his inquiry, violated appellant's rights under Article 1, [Section] Fourteen of the Ohio Constitution and the Fourth and Fourteenth Amendments to the Constitution of the United States.
 "[2.] The trial court erred in impounding and immobilizing appellant's vehicle because it lacked the authority to do so under the law."[4]
Because the first assignment of error challenges the trial court's decision to deny appellant's motion to suppress, we will lay out the appropriate standard of review.
"In a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. State v.Robinson (1994), 98 Ohio App.3d 560. When reviewing a trial court's ruling on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594. An appellate court must independently determine, without deferring to the trial court's conclusions, whether, as a matter of law, the facts meet the applicable standard. State v. Klein (1991), 73 Ohio App.3d 486, 488."State v. Thompson (July 27, 2001), Trumbull App. No. 2000-T-0096, unreported, 2001 WL 848566, at 2.
Furthermore, by overruling appellant's motion to suppress, the trial court implicitly determined that Officer Pattie's testimony was more credible than that of appellant and Mr. Bucar. As such, we will not disturb the trial court's decision to believe the police officer because "[m]atters of weight and credibility are for the trier of fact [to resolve], including at suppression hearings. State v. DeHass (1967),10 Ohio St.2d 230, * * * paragraph one of the syllabus; State v. Fanning
(1982), 1 Ohio St.3d 19, 20, * * *." (Parallel citations omitted.) Statev. Chapman (1994), 97 Ohio App.3d 687, 691-692.
Returning to the first assignment of error, appellant presents several different issues for our review. First, appellant maintains that Officer Pattie lacked the requisite suspicion to stop his vehicle. According to appellant, simply weaving slightly over the marked lines does not constitute reasonable suspicion to effectuate a stop of the vehicle. To support his position, appellant relies on a number of cases which have held that evidence of a momentary or minuscule crossing of a line or weaving within a lane, without more, does not give rise to reasonable suspicion sufficient to justify an investigatory stop. State v. Johnson
(1995), 105 Ohio App.3d 37, 40-42 (vehicle crossed the right edge line twice by less than one tire width); State v. Drogi (1994),96 Ohio App.3d 466, 469-470 (vehicle's left front tire crossed one foot over the center line, went right towards the edge line, then left without crossing the center line and eventually across the right edge line);State v. Gullett (1992), 78 Ohio App.3d 138, 145 (vehicle crossed the right hand edge line twice).
As to this point, this court has made the following determination:
 "[A]lthough the appellate courts of this state are in general agreement that not every edge line crossing by a motorist permits police to conduct a traffic stop, instances of erratic or substantial roadway line crossing will vest a police officer with probable cause to perform such a stop." (Emphasis added.) State v. Schofield (Dec. 10, 1999), Portage App. No. 98-P-0099, unreported, 1999 WL 1297605, at 3.
On numerous occasions, this court has held that a driver committing only a de minimis marked lanes violation, without other evidence of impairment, does not justify an officer stopping a vehicle. State v.Haley (Mar. 16, 2001), Portage App. No. 2000-P-0021, unreported, 2001 WL 276862, at 2. Rather, "there must be some indicia of erratic driving to warrant an investigative stop beyond some incident of modest or minimal weaving in one's lane alone." State v. Spikes (June 9, 1995), Lake App. No. 94-L-187, unreported, 1995 WL 407357, at 4. Thus, "police officers may lawfully stop a motor vehicle solely on the basis that the vehicle is weaving, but only when the extent of the weaving [is] what can be described as substantial." (Emphasis added.) Willoughby v. Mazura (Sept. 30, 1999), Lake App. No. 98-L-012, unreported, 1999 WL 960573, at 3.
In the case sub judice, appellant's vehicle was being operated within the speed limit for the area. Despite that fact, his vehicle repeatedly
crossed the marked lanes within a short distance. According to Office Pattie, he was four to six car lengths behind appellant, and he followed appellant for approximately a quarter of a mile. During this time, Officer Pattie observed appellant's vehicle drift from the left lane into the right lane approximately a foot, return to the left lane, and then go left of center about a foot over the double yellow lines. Upon returning to the left lane, appellant's vehicle drifted into the right lane several more times.
Under these particular facts, appellant's failure to operate his vehicle within the marked lanes was more than a de minimis marked lanes violation. Rather, such weaving was tantamount to erratic driving. Given the totality of the circumstances, Officer Pattie had both reasonable suspicion and probable cause to initiate a stop of appellant's vehicle. See, e.g., Warren v. Cecil (Sept. 30, 1999), Trumbull App. No. 98-T-0152, unreported, 1999 WL 959841, at 2 (holding that an officer had reasonable suspicion to stop defendant when his vehicle drifted about a foot over the right edge line, then jerked back to the center of the lane on two occasions and then crossed the broken line dividing the northbound lanes).
The second issue advanced under the first assignment of error challenges the administration of the field sobriety tests. At the outset, appellant suggests that the HGN test is insufficient to indicate that he was intoxicated. According to appellant, the HGN test is not completely accurate "since other physiological and neurological factors may cause a more profound or earlier involuntary muscle reaction of the eye, a condition that allows failure of the test."[5]
During the suppression hearing, appellant failed to present this argument to the court below. As a result, he has waived this issue for purposes of appeal. State v. Childs (1968), 14 Ohio St.2d 56, paragraph three of the syllabus; State v. Borowiak (June 29, 2001), Portage App. No. 2000-P-0043, unreported, 2001 WL 735742, at 3. Even if appellant had properly preserved this issue for appellate review, his contention is not well-founded.
According to the Supreme Court of Ohio, the HGN test is a reliable indicator in determining whether an individual is under the influence of alcohol:
 "* * * the HGN test is the single most accurate field test to use in determining whether a person is alcohol impaired. * * * Although many people will have some nystagmus as their eyes move to an extreme side, as people become intoxicated, the jerking becomes not only more frequent and pronounced but it also occurs at an earlier angle." (Citation omitted and emphasis added.) State v. Bresson (1990), 51 Ohio St.3d 123, 125-126. See, also, State v. Sanders (1998), 130 Ohio App.3d 789, 799.
Next, appellant alleges that Officer Pattie did not follow the proper procedure mandated by the National Highway Safety Administration when he administered the HGN test, and that appellant had a medical condition known as heel spurs which prevented him from performing well on the walk and turn and one-legged stand tests.[6] According to appellant, if the field sobriety tests were excluded, then Officer Pattie's observations were an insufficient basis to form the requisite probable cause for an arrest.
"While field sobriety tests must be administered in strict compliance with standardized procedures, probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of these tests. The totality of the facts andcircumstances can support a finding of probable cause to arrest evenwhere no field sobriety tests were administered or where, as here, thetest results must be excluded for lack of strict compliance." (Emphasis added.) State v. Homan (2001), 80 Ohio St.3d 421, 427.
Even if we assume, arguendo, that the results from the field sobriety tests must be excluded, the totality of the facts and circumstances support Officer Pattie's decision to arrest appellant. As noted earlier in this opinion, prior to stopping appellant's vehicle, Officer Pattie observed appellant repeatedly drift out of his driving lane in a short distance, which was tantamount to erratic driving. After stopping appellant's vehicle, the officer observed that appellant's eyes were bloodshot and glassy, that his speech was slightly slurred, and there was a slight odor of alcohol on his breath. Further, appellant admitted to Officer Pattie that he had consumed alcoholic beverages. Based on these particular observations, the officer had probable cause to arrest appellant. See, e.g., Homan at 427 (holding that the officer had probable cause to arrest defendant for driving under the influence where the officer observed erratic driving (twice driving left of center), that defendant's eyes were red and glassy, her breath smelled of alcohol, and she admitted to consuming three beers).
In the final issue advanced under the first assignment of error, appellant alleges that the breath test should be suppressed because the police department did not comply with the Ohio Department of Health ("ODH") regulations, and that the prosecution did not present any evidence to support the admissibility or the test results.
In light of the holding announced in State v. Ryan (1984),17 Ohio App.3d 150, this argument is moot. According to Ryan, "evidence necessary to convict an accused of R.C. 4511.19(A)(1) was exclusive of the evidence needed to convict an accused of R.C. 4511.19(A)(3)." Statev. Frazier (Oct. 6, 2000), Trumbull App. No. 99-T-0109, unreported, 2000 WL 1488364, at 4. See, also, Borowiak at 4.
In the instant matter, appellant was only found guilty of driving under the influence of alcohol, in violation of R.C. 4511.19(A)(1). There was other independent evidence presented to adequately indicate that appellant operated the vehicle under the influence of alcohol. For instance, Officer Pattie observed appellant's erratic driving, noticed a slight odor of alcohol on his breath, that his eyes were bloodshot and glassy, and that his speech was slightly slurred. Further, appellant admitted to consuming two or three beers. Based on the officer's observations, the results of the breath test were not necessary to sustain appellant's conviction for R.C. 4511.19(A)(1).
Furthermore, appellant's broad claims that the breath tests were not conducted in compliance with the ODH regulations are too general to put the state and the court on notice of the basis of his challenge. Crim.R. 47 requires that a motion to suppress "state with particularity the grounds upon which it is made." See, also, State v. Shindler (1994),70 Ohio St.3d 54, 56-57; Xenia v. Wallace (1988), 37 Ohio St.3d 216, paragraph one of the syllabus. "Stating a specific rule in conjunction with a citation to the relevant Ohio Administrative Code section is sufficient to satisfy the standard set forth in Shindler." State v.Savage (Nov. 19, 1999), Ottawa App. No. OT- 99-036, unreported, 1999 WL 1048237, at 3. See, also, State v. Borgerding (1997), 119 Ohio App.3d 632,637; Shaker Heights v. Shomade (Sept. 14, 2000), Cuyahoga App. No. 77605, unreported, 2000 WL 1299786; State v. Johnson (June 12, 2000), CA 99-10-028, unreported, 2000 WL 745310, at 2; State v. Williams (Apr. 24, 1998), Montgomery App. No. 16554, unreported, 1998 WL 214595, at 3.
In the present cause, appellant did not specifically state either in his motion to suppress or at the suppression hearing in what way the police department failed to adhere to the regulations. Nor did appellant challenge the breath test results on the basis that specific regulations were violated. "The state cannot be expected to anticipate and prepare to address every possible violation of the Department of Health regulations without any indication as to which violation was alleged to have occurred." Borgerding at 637. Accordingly, appellant failed to give sufficiently specific allegations to alert the state to the nature of his challenge of the breath tests. See, e.g., Shindler at 57-58 (holding that a motion to suppress set forth sufficient factual and legal basis when the defendant challenged the admission of her breathalyzer test results on the basis of specific regulations and constitutional amendments believed to be violated).
Based on the foregoing reasons, the first assignment of error and all of its issues are without merit.
Turning to the second assignment of error, appellant maintains that the trial court erred in impounding and immobilizing his vehicle because under R.C. 4511.195(B)(1)(a), appellant had not been convicted of or pled guilty within the last six years of violating R.C. 4511.19(A) or (B).[7]
During the proceedings below, appellant filed a motion to release his vehicle from the impound lot based on the aforementioned reasons. Upon consideration, the trial court released appellant's vehicle from the impound lot. In addition, the court granted appellant limited driving privileges provided that family plates were obtained and an ignition interlock system was installed in the vehicle.
Accordingly, the issue of impounding appellant's vehicle was already considered and well-taken by the trial court as evidenced through its April 11, 2001 judgment entry. Appellant's second assignment of error is, therefore, without merit.
Based on the foregoing analysis, appellant's assignments of error are not well-taken, and the judgment of the trial court is affirmed.
FORD, P.J., GRENDELL, J., concur.
[1] According to appellant, he was wearing contact lenses at the time of the traffic stop, and the officer failed to ask him whether he was wearing contact lenses before administering the HGN test. Also, during the one- legged stand test, appellant claimed he told the officer that he could not perform the test because he had problems with his feet and knees. According to appellant, he has a medical condition known as heel spurs, which prevented him from standing still for long periods of time as it caused him to experience pain.
[2] At the close of the suppression hearing, the trial court provided the following reasons for denying appellant's motion to suppress:
"The motion is overruled.
 "I will have to admit that the testimony could have been better.
 "But, you know, once again your client and his witness have a lot more reason to try to remember everything that occurred and particularly to get their stories together, and they certainly are pretty well together.
 "I am not saying they are lying. I am simply saying that they discussed the case, obviously, and, you know, got it over. Whereas, the police officer didn't do any of that.
 "We've got the question of course of distance and we've got one-eighth of a mile down from Center Street, I think was the testimony here, when the police officer first came up.
 "So we've got some period of time before Garfield Road that is involved.
 "So based on the differences in the viewpoint, and the times, and the distances that are involved here, your motion is overruled." (Emphasis added.)
[3] In its May 9, 2001 judgment entry, the trial court incorrectly stated that driving under the influence of alcohol and/or drugs was a violation of R.C. 4511.19(A)(3). Rather, as noted in this opinion, operating a vehicle while under the influence of alcohol and/or drugs is a violation of R.C. 4511.19(A)(1), while operating a vehicle with a prohibited concentration of alcohol is a violation of R.C. 4511.19(A)(3). We further note that a transcript of the sentencing hearing was not included in the appellate record. Although it is unclear, it seems that the remaining charges against appellant for violating R.C. 4511.19(A)(3) and R.C. 4511.33 were dismissed.
[4] In the instant appeal, appellant does not allege that Officer Pattie lacked reasonable suspicion to administer the field sobriety tests. Rather, appellant takes issue with the manner in which these tests were conducted. As such, we limit our analysis accordingly.
[5] At the suppression hearing, appellant stated that he did not have any neurological problems or a medical condition that would cause his eyes to flicker.
[6] Appellant did not specifically challenge the field sobriety tests in his motion to suppress. Crim.R. 47 requires that a motion to suppress state its underlying legal and factual basis with sufficient particularity to place the prosecution and the trial court on notice of the issues to be decided. State v. Hominsky (1995), 107 Ohio App.3d 787,791. Despite appellant's failure to strictly comply with Crim.R. 47, appellee did not object to him arguing this issue at the suppression hearing. Thus, we will address the merits of this argument. State v.Mustafa (Dec. 14, 2001), Portage App. No. 2000-P-0116, unreported, 2001 Ohio App. LEXIS 5661, at 3, fn. 1; State v. Robinson (June 30, 2000), Portage App. No. 99-P-0019, unreported, 2000 WL 895587, at 2.
[7] In this assignment of error, appellant makes no mention of the ignition interlock system that was installed in his vehicle after the trial court released the vehicle from the impound lot. As such, appellant does not seem to take issue with the trial court imposing the use of this system in his vehicle. Rather, appellant merely challenges the trial court's authority to impound his vehicle. Thus, we will limit our analysis accordingly.