OPINION
{¶ 1} Defendant-appellant, Frederick Gunn, appeals the decision of the Madison County Municipal Court denying his motion to suppress evidence in a DUI case. We affirm the municipal court's decision.
 {¶ 2} In June 2003, appellant was arrested and charged with driving under the influence, criminal damaging, operating a motor vehicle without a license, operating a motor vehicle with-out out reasonable control, and leaving the scene of an accident. Appellant subsequently filed a motion to suppress, arguing that the arresting officer unlawfully entered his home. Appellant argued that the officer violated his constitutional rights, and that any evidence or statements obtained by that officer after he entered appellant's home should be suppressed.
 {¶ 3} The municipal court held a hearing on appellant's motion in July 2003. Officer Campbell, a police officer for the Village of West Jefferson and the arresting officer, was the only witness to testify at the hearing. Officer Campbell testified that, on the day of the offense, he received a call from a dispatcher that a white pickup truck had hit a mailbox at 363 Parkdale Road in the Village of West Jefferson. While in route to that address, he was further advised that the driver had parked the pickup in the driveway of 362 Parkdale and had gone inside the house. Officer Campbell soon arrived at 362 Parkdale and noticed the truck parked in the driveway and the damaged mailbox. He then knocked on the door. No one answered.
 {¶ 4} Barbara Miller, who resided at 362 Parkdale with appellant, soon arrived in her car. When Officer Campbell asked whose truck was in her driveway, Ms. Miller told him that she had just taken the owner of the truck to London, Ohio. Ms. Miller then went inside the house.
 {¶ 5} Officer Campbell and Patrolman Baugess, who was also at the scene, then spoke to several witnesses who lived nearby. One witness told Patrolman Baugess that appellant had driven the truck into the driveway. Patrolman Baugess relayed that information to Officer Campbell. Witnesses were also able to give the officers a physical description of appellant, who had been wearing a black t-shirt, blue jeans, and no shoes.
 {¶ 6} After speaking to the witnesses, Officer Campbell went back to the door of 362 Parkdale and knocked. After about five minutes, Ms. Miller came to the door. Officer Campbell asked her if anyone else was in the house, to which he received no response. She then retreated into the house. As to what took place next, Officer Campbell testified as follows: "At some point, I ended up in the residence[.]" He testified that he could not recall whether he was invited in by Ms. Miller or not. He testified that the screen door to the house was closed, that the main door was open, and that he could hear appellant and Ms. Miller talking downstairs through the screen door. Officer Campbell testified that appellant and Ms. Miller were talking in a normal tone, and that there was no sign of distress or an emergency. Officer Campbell remembered entering the house, going into the kitchen, and then calling appellant and Ms. Miller upstairs. Officer Campbell testified that he did not have a warrant to enter the residence. He further testified that appellant and Ms. Miller voluntarily came upstairs, and that no one ever asked him to leave the house. Officer Campbell also testified as follows: "I think once I had them come upstairs, we went outside."
 {¶ 7} Officer Campbell testified that it was not his intention to arrest appellant once appellant came upstairs, but that he simply wanted to speak to him about the damaged mailbox. When questioned by Officer Campbell about the mailbox, appellant denied having driven the truck. However, appellant matched the physical description provided by the witnesses. Officer Campbell subsequently noticed that appellant was slurring his speech, that he had an odor of alcohol, and that his eyes were glassy. Appellant denied that he had been drinking. Appellant then refused Officer Campbell's request to perform field sobriety tests. At that time, Officer Campbell arrested appellant for DUI and criminal damaging. At the West Jefferson Police Department, appellant gave a breath sample with a concentration of alcohol well over the legal limit.
 {¶ 8} Ruling from the bench, the municipal court denied appellant's motion to suppress. In so ruling, the following exchange took place between the court and appellant's counsel:
 {¶ 9} "THE COURT: How does your motion change, if at all, counsel, by virtue of the testimony, the uncontroverted testimony of the officer that when the defendant came up from the basement, they then all three proceeded outside, at which he conducted his investigation, visa via [sic] the accident, and thereafter, asked the defendant to perform the field sobriety tests and not inside the home?
 {¶ 10} "MS. TREYNOR: * * * Well, I don't have any information at this point in time as to where those requests took place. The fact of the matter is, is that the officer entered the home without consent and didn't have any probable cause to request the defendant to come outside in the first place.
 {¶ 11} "THE COURT: Well, I beg to differ, counsel, that the officer was there to investigate an accident. Apparently, someone in a white pickup truck backed into a neighbor's mailbox and damaged that mailbox. Then, apparently, according to the information that the officer received on the scene, retreated to the residence at * * * 362 Parkdale without reporting this accident to the police authorities. He was attempting to investigate a criminal damaging issue, an accident that occurred, a leaving the scene, and needed information pursuant to the information he did have available to him. Having reviewed the condition of the truck, noting that there was damage to the right rear bumper of the truck consistent with * * * his view of the damage to the mailbox, and having the benefit of several witnesses who said: A.) That was the truck, B.) The driver of the truck was Frederick M. Gunn, and C.) That he was now in the residence of 362 Parkdale. That the officer had probable cause to pursue the defendant believing that a crime had been committed or was being committed in his presence. He obtained access to the home through his conversations initially with Barbara Miller the owner and/or tenant of the home. Then went back outside and apparently went back inside after hearing the parties talk in the basement, according to the testimony, through an open screen door. Invited them to come to the surface or come to the ground floor, went back outside with the parties, and ultimately requested that the defendant do some field sobriety testing. Under those circumstances, as this Court understands the facts, again, the uncontroverted testimony, I find that there was probable cause to site [sic] the defendant with O M V I as a result of those observations during the investigation of the accident. * * * The Court will overrule the motion to suppress in each and every particular."
 {¶ 12} In September 2003, appellant entered a no contest plea to the DUI charge, a violation of R.C. 4511.19(A)(1). Appellant now appeals the municipal court's decision denying his motion to suppress, assigning two errors.
 {¶ 13} Assignment of Error No. 1:
 {¶ 14} "The court erred in concluding that the entry into the home was consensual and that the defendant was arrested outside the home as such conclusions are against the manifest weight of the evidence."
 {¶ 15} Assignment of Error No. 2:
 {¶ 16} "The trial court erred when it concluded that the officer had probable cause to pursue the defendant into his place of residence."
 {¶ 17} In his first assignment of error, appellant argues that the municipal court erred in concluding that the arresting officer's entry into appellant's home was consensual. Appellant argues that because the state failed to establish consent, the municipal court should have granted appellant's motion to suppress.
 {¶ 18} When considering a motion to suppress evidence, the trial court serves as the trier of fact and is the primary judge of the credibility of witnesses and the weight of the evidence.State v. Mills (1992), 62 Ohio St.3d 357, 366. When reviewing a trial court's decision on a motion to suppress, an appellate court must accept the trial court's factual findings if they are supported by substantial and credible evidence. State v.Williams (1993), 86 Ohio App.3d 37, 41, overruled on other grounds as stated in Village of McComb v. Andrews (Mar. 22, 2000), Hancock App. No. 5-99-41, 2000 WL 296078, at *5. An appellate court, however, reviews de novo whether the trial court applied the appropriate legal standard to the facts. State v.Anderson (1995), 100 Ohio App.3d 688, 691.
 {¶ 19} It is undisputed that Officer Campbell did not have a warrant authorizing him to enter the home of appellant and Ms. Miller. Warrantless home entries are presumptively unreasonable.State v. Nields, 93 Ohio St.3d 6, 15, 2001-Ohio-1291. The burden is on the state to overcome the presumption by demonstrating that the entry fell within one of the well recognized exceptions to the warrant requirement. See State v.Kessler (1978), 53 Ohio St.2d 204, 207.
 {¶ 20} One of the established exceptions to the warrant requirement is when an officer's entry into a home is authorized by the voluntary consent of the occupant. Illinois v. Rodriguez
(1990), 497 U.S. 177, 180, 110 S.Ct. 2793. The issue of whether consent was voluntarily given is an issue of fact to be determined based on the totality of circumstances. Schnecklothv. Bustamonte (1973), 412 U.S. 218, 227, 93 S.Ct. 2041. The state has the burden of proving that consent was freely and voluntarily given. Bumper v. North Carolina (1968),391 U.S. 543, 548, 88 S.Ct. 1788.
 {¶ 21} In this case, the municipal court found that Officer Campbell "obtained access to the home through his conversations initially with Barbara Miller[,] the owner and/or tenant of the home." We take this to be a finding that Ms. Miller consented to allowing Officer Campbell to enter the home. We must now determine whether there is competent, credible evidence in the record supporting the municipal court's factual finding of consent, based on the totality of the circumstances.
 {¶ 22} We note at the outset of our analysis that this case does not involve the issue of whether consent was given to enter a house in order to conduct a search or execute an arrest. Officer Campbell clearly testified that he did not initially intend to arrest appellant, but that he simply wanted to speak to him about the damaged mailbox. This court has noted that the above distinction is not always carefully made. State v. Rammel
(Sept. 18, 2000), Madison App. No. CA99-10-023, 2000 WL 1336493, at *2. When the intent of the officer is not to search, but merely to enter and ask questions, courts have applied a lower standard for proving voluntary consent. See State v. Chapman
(1994), 97 Ohio App.3d 687, 689-690; City of Akron v. Harris
(1994), 93 Ohio App.3d 378, 382.
 {¶ 23} We find this case similar to City of Sylvania v.Cellura (May 31, 1998), Lucas App. No. L-97-1086, 1998 WL 161031. In Cellura, officers investigating a recent auto accident knocked on the defendant's door to question her about the accident. While on the phone, the defendant opened her apartment door. To no objection by appellant, the officers stepped inside the doorway of the apartment. After speaking with the defendant, the officers noticed signs of intoxication. The defendant then voluntarily accompanied the officers to the parking lot of her apartment complex to survey the damage to her vehicle. Appellant was eventually arrested for DUI after she failed field sobriety tests in the parking lot.
 {¶ 24} The court in Cellura found that the defendant had consented to the officers' entry into her apartment. Id. at *5. The court noted that the defendant opened the door to her apartment, that she did not object to the officers' brief presence inside her doorway, that she never asked the officers to leave, and that the officers did not use compulsion or force to obtain entry. The court also noted that, as in this case, the officers were not there to arrest the defendant, but were there to question her about a recent traffic accident. The court noted that the officers arrested appellant in the parking lot outside her apartment, after there determining that they had probable cause to make an arrest.
 {¶ 25} As the court found in Cellura, we find competent, credible evidence supporting the municipal court's consent finding. While Officer Campbell testified that he could not recall whether Ms. Miller verbally invited him inside the house, we find factual support for the municipal court's consent determination, based on the totality of the circumstances. Officer Campbell had spoken several times with Ms. Miller prior to entering the house. After Officer Campbell spoke to Ms. Miller the second time, Ms. Miller left the main door to the house open with the screen door closed while she went downstairs to talk to appellant. At no point did appellant or Ms. Miller object to Officer Campbell's brief presence upstairs or ask him to leave. Additionally, there is no evidence in the record showing that Officer Campbell used compulsion or force to enter the house. According to Officer Campbell, appellant and Ms. Miller voluntarily came upstairs. The municipal court accepted as credible Officer Campbell's testimony that appellant and Ms. Miller voluntarily accompanied him outside. It was there that Officer Campbell made the additional observations sufficient to justify an arrest for DUI.
 {¶ 26} After carefully reviewing the record, we overrule appellant's first assignment of error because the record supports the municipal court's consent finding. Based on our ruling on appellant's first assignment of error, we dismiss appellant's second assignment of error as moot. See App.R. 12(A)(1)(c). Because Officer Campbell had the consent of Ms. Miller, he could lawfully enter the house. We need not determine whether Officer Campbell had probable cause to pursue appellant into the house.
Accordingly, we affirm the decision of the municipal court.
Young, P.J., and Walsh, J., concur.