THE STATE OF OHIO, APPELLEE, *v.* LETT, APPELLANT.

(No. 8925—Decided November 13, 1961.)

*Mr. C. Watson Hover,* prosecuting attorney, and *Mr. William S. Mathews,* for appellee.

*Mr. Paul W. Schuch,* for appellant.

HILDEBRANT, J. Defendant, appellant herein, was convicted for violating Section 2905.34, Revised Code, making it a crime for anyone to "knowingly * * * have in his possession or under his control an obscene, lewd, or lascivious * * * photograph."

His sole defense was one of law that the statute was unconstitutional in that it amounted to a deprivation of freedom of speech and press, as guaranteed by the First and Fourteenth Amendments to the Constitution of the United States, and a claim of unreasonable search and seizure based upon the admitted lack of a search warrant, in violation of the Fourth and Fifth Amendments to the Constitution of the United States.

Appellant, in support of his first contention, cites the case of *Smith* v. *California* (1959), 361 U. S., 147, 4 L. Ed. (2d), 205, 80 S. Ct., 215. It is stated in the syllabus:

"Appellant, proprietor of a bookstore, was convicted of violating a city ordinance which was construed by the state courts as making him absolutely liable criminally for the mere possession in his store of a book later judicially determined to be obscene—even if he had no knowledge as to the contents of the book. *Held:* As thus construed and applied, the ordinance violates the freedom of the press which is safeguarded by the Due Process Clause of the Fourteenth Amendment from invasion by state action.
"* * *

"(c) Obscene expression is not constitutionally protected; but this ordinance imposes an unconstitutional limitation on the public's access to constitutionally protected matter. For, if the bookseller be criminally liable without knowledge of the contents, he will tend to restrict the books he sells to those he has inspected; and thus a restriction will be imposed by the states upon the distribution of constitutionally protected as well as obscene books."

The Los Angeles ordinance making a bare possession unlawful, lacked the word, "knowingly," as used in the Ohio statute.

It is further contended that the addition of the word, "knowingly," to the Ohio statute fails to require *scienter,* the

defendant arguing that one innocently in possession of matter later judicially found to be obscene would be guilty of a crime, and thus a restriction would be imposed on constitutionally protected as well as obscene matter.

*State* v. *Mapp*, 170 Ohio St., 427, is cited wherein a majority of the Supreme Court expressed the opinion that this very statute is unconstitutional, but the court, not having the required majority of six to override the Court of Appeals, was unable to declare it so. The majority view appears at page 433 of the opinion, wherein it is stated:

"It may be argued that the legislation involved in the instant case, unlike that involved in the *Smith case*, required *scienter* because it only makes it unlawful to '*knowingly* * * * have * * * possession.' However, this legislation is analogous in its effect to that in the *Smith case*. If anyone looks at a book and finds it lewd, he is forthwith, under this legislation, guilty of a serious crime, which may involve a sentence to the penitentiary similar to the one given to this defendant. As a result, some who might otherwise read books that are not obscene may well be discouraged from doing so and their free circulation and use will be impeded. Cf. *Benjamin* v. *City of Columbus*, 167 Ohio St., 103, where no question of freedom of press involved."

This court is most respectfully unable to subscribe to that view.

This court is of the opinion that the word, "knowingly," as used in Section 2905.34, Revised Code, and in the indictments, has that legal meaning and connotation which satisfies the requirement of *scienter*.

In III Bouvier's Law Dictionary, Rawle's Third Revision, 3013, the following appears:

"*Scienter* (Lat. knowingly). The allegation in a pleading of knowledge; Webb's Poll. Torts, 614; on the part of a defendant or person accused, which is necessary to charge upon him the consequence of the crime or tort."

Webster's New International Dictionary (2d Ed.) defines *scienter* as: "*adv.* [L.] *Law*. Knowingly; willfully.—*n. Law*. A Such knowledge as charges a man with the consequences of his acts (cf. MISTAKE, *n.*, 2). B In a pleading, the allegation of such knowledge on the part of the accused or defendant as is necessary to constitute his act a crime or tort."

It is stated in 23 Words and Phrases, Permanent Edition, 572, with reference to use of the word "knowingly" in an indictment:

"In its ordinary acceptation the word 'knowingly,' when applied to an act or thing done, imports knowledge of the act or thing so done, as well as an evil intent or a bad purpose in doing such thing. So that a charge in an indictment that defendant knowingly deposited in the mails a printed book, etc., the character of which was obscene, lewd, and lascivious, sufficiently charges, after verdict, both that the book is in fact obscene and that the defendant knew it to be so." *Price* v. *United States*, 165 U. S., 311, 17 S. Ct., 366, 41 L. Ed., 727; *Rosen* v. *United States*, 161 U. S., 29, 16 S. Ct., 434, 435, 40 L. Ed., 606.

Many cases are cited in the text wherein the word "knowingly" used in an indictment is deemed synonymous with the words "willfully" and "unlawfully."

See, also, annotations in the 1961 Cumulative Annual Pocket Part under the word "Knowingly."

Under this view of the statute, does it impose an unconstitutional limitation on the public's access to constitutionally protected matter, analogous to the *Smith case*? We think not.

The hypothesis of an absolute criminal liability attaching to one who looks at a book and finds it lewd, or, for an additional hypothesis, to the unwitting, unwilling recipient of mail containing matter obscene, indecent and offensive to the mind and view of the recipient, fails to take into account that while upon discovery of the obscenity of the book or matter they may, at that instant, be said to be knowingly in possession of the same, that knowledge is not accompanied with any willful, unlawful, evil intent or bad purpose sufficient to charge them with the consequences of the "knowing possession" inhibited by the statute and as charged in this indictment.

A strict construction of the word "knowingly" as used in the criminal statute and in the indictment properly confining its connotation to its technical and legal charge of *scienter* and such knowledge as imports unlawfulness, willfulness, and evil intent, sufficient to charge the consequences of the crime inhibited by the statute, would, it seems to us, obviate the applicability of the statute to the hypotheses set forth above as to one coming accidentally, unwittingly, unwillingly and innocently into possession of obscene matter.

Giving such construction to the statute, it is our view no restriction would be imposed upon constitutionally protected matter meriting the notice of the law.

In the *Mapp case*, the Supreme Court of the United States did not see fit to comment on the constitutionality of the statute, and the Ohio Supreme Court did not have the required majority to hold the statute unconstitutional. This court, for the reasons set forth above, is unwilling to do so.

Coming now to the claim of an unreasonable search and seizure, the cause was tried to the court, a jury being waived, upon a stipulation of facts contained in the opening statements of counsel and colloquy with the court set forth in full, as follows:

"Mr. Mathews: May it please the court, Mr. Schuch, I expect the evidence on behalf of the state of Ohio to show that the defendant, Allen Thorpe Lett, on or about the 13th day of April, 1960, was at his home which was located at 1106 Broadway. This was an apartment. Several officers from the vice squad went up to the apartment on information that the defendant had been having parties there and had a number of obscene pictures. They went into the apartment; that is, the door was open, and the defendant was seated in the kitchen there. He admitted them. They told him the nature of their visit, and he said, 'Well, there's nothing here. You can feel free to look around; help yourself.'

"And they came to a closet in the apartment which was locked. The police requested that he unlock that to permit them to complete their search. The defendant did unlock the closet. As soon as the door was opened, a small bank night-deposit pouch was found in the closet. The officers reached up and pulled the pouch out, whereupon the defendant said, 'Do you have a search warrant?' The contents of the pouch were examined and found to contain 34 obscene photographs, and then further the defendant was questioned about the photographs. He admitted that they were his and that he had placed them there. As a matter of fact, a number of the photographs included the defendant himself in the photographs.

"And I believe that at the conclusion of all the evidence the court will find that in addition to this offense happening in Hamilton County, Ohio, the other allegations of the indictment are true and that the defendant will be found guilty as charged.

"Mr. Schuch: Mr. Mathews, I believe you will agree that there was in fact no search warrant. Is that correct?

"Mr. Mathews: Yes.

"Mr. Schuch: Your Honor, we have no disagreement with the statement as presented by Mr. Mathews, that is, no essential disagreement. We do, however, question the validity of the criminal statute involved here, and we feel that it is unconstitutional. We feel that factor, together with the lack of a search warrant and a subsequent unreasonable search and seizure, indicate that the defendant is not guilty on a technical ground.

"Now, so far as the facts are concerned, we are willing to stipulate that the facts are essentially as stated by Mr. Mathews.

"The Court: In other words, I understand you are willing to stipulate on behalf of the defendant at this time, that the allegations in the indictment are true, that the offense happened in Hamilton County, and that your sole defense in this matter is what?

"Mr. Schuch: Is one of unreasonable search and seizure based upon the lack of a search warrant, and one of unconstitutionality or invalidity of the criminal statute involved.

"The Court: In other words, your defense is strictly one of law?

"Mr. Schuch: That's correct.

"The Court: Is there anything else to be stipulated?

"Mr. Mathews: I think that would cover the situation."

(Counsel submitted the case to the court on the stipulation and then argued the matter to the court.)

"The Court: May the court see the exhibits?

"Mr. Mathews: Your Honor, they are upstairs. I'll run up and get them. It will just take me a second.

"The Court: Well, will counsel provide the court with the exhibits? They must be offered as a part of this case which I understand you did in your stipulation.

"Mr. Mathews: Yes. There are 34 photographs, some involving women in nude poses, others involving sex acts, both natural and unnatural.

"The Court: It is admitted then that your stipulation carried the introduction of the exhibits?

"Mr. Schuch: Yes.

"The Court: All right. They may be introduced as ex-

hibits. Let the record show that they may be marked and submitted.''

This court is committed to the proposition that all general or exploratory searches of a person's home, with or without a warrant, are unreasonable and in violation of both the Constitution of the United States and the Constitution of the state of Ohio.

However, it is a general principle of law that one may voluntarily consent to an illegal search and seizure and thereby waive his constitutional rights in that regard. In 47 American Jurisprudence, 547, Section 71, it is stated:

''In accord with the general principle permitting an individual to waive constitutional provisions intended for his benefit, the constitutional right to be secure in person and effects against unreasonable search and seizure may be waived. And one who thus waives his constitutional protection and consents to have his property searched by an officer without warrant has no right of action as for an illegal search. * * *

''While it is clear that one may, by voluntary consent to an illegal search and seizure, waive his constitutional rights in this regard, the cases are by no means agreed as to what amounts to a consent. A distinction is recognized, however, between submission to the apparent authority of an officer and unqualified consent. Mere acquiescence in a search is not necessarily a waiver of a valid search warrant. Rather, for an occupant to waive his rights, it must clearly appear that he voluntarily permitted or expressly invited and agreed to the search, being cognizant of his rights in the premises; and whether such a consent was freely given is a question of fact.''

And, in 48 Ohio Jurisprudence (2d), 746, Section 12, it is stated:

''An officer may search premises without a warrant if it is done with the owner's consent or if the owner assists in conducting the search. The fact that a search warrant was based upon an insufficient affidavit is immaterial where the officers did not enter the building in question by reason of the search warrant, but were admitted by the occupant, and a suspected person waived his constitutional rights by telling the officers to search him and his car if they so desired as he had nothing illegal in his possession. * * *''

Upon the stipulation of facts on the record here, we are of the opinion that it clearly appears the defendant voluntarily and expressly invited and agreed to a search. His query, ''Do you have a search warrant?,'' after voluntarily unlocking the closet door, only goes to show that he was cognizant of his rights thereto.

It is further generally held that when voluntary consent to search is given, it may not be countermanded during the search.

For the reasons stated above, the judgment of the Court of Common Pleas is affirmed.

*Judgment affirmed.*

LONG, P. J., concurs.