CITY OF SOUTH EUCLID *v.* DiFRANCO ET AL. (Two cases.)

[Cite as City of South Euclid v. DiFranco, 4 Ohio Misc. 148.]

(Nos. 7058 and 7059—Decided April 20, 1965.)

CRIMINAL PROSECUTION: Municipal Court of South Euclid.

*Mr. Paul Mancino, Jr.,* city prosecutor, for plaintiff.
*Mr. Paul Mancino, Sr.,* for defendants.

## The Facts.

Klein, J.  The facts relevant to this motion to suppress are as follows: About 3:30 a. m. on July 27, 1964, the South Euclid police dispatcher advised Lieutenant Trantner by police radio that he had just received a telephone call from a South Euclid resident to the effect that, while looking out of the window of his house on Princeton Boulevard, he (the resident) observed two males take a set of golf clubs from a house on Princeton Boulevard and place the clubs in the trunk of a bronze-colored Cadillac.  Lieutenant Trantner's police car and two other South Euclid police cars were dispatched to the area.

About five to ten minutes after receiving the call from the dispatcher, Lieutenant Trantner spotted a car which fit the description given him by the dispatcher.  After stopping the car, Lieutenant Trantner asked the occupants to get out of the vehicle, and they complied.

With respect to what transpired thereafter, Lieutenant Trantner testified that when he asked the defendants what was in the trunk of their car, the defendant Kucsma (the owner of the car) voluntarily opened the trunk.  When the trunk was opened, Lieutenant Trantner observed the golf clubs which are the subject of this motion to suppress.  The defendants were then searched at the scene, taken to the South Euclid Police Station, and subsequently charged with petty larceny pursuant to South Euclid City Ordinance 555.01.

The defendants' version of what occurred after they were stopped differed substantially from Lieutenant Trantner's version.  They stated that Lieutenant Trantner took the car keys out of the defendant Kucsma's pocket and put them on the roof of the car.  Kucsma stated that Lieutenant Trantner asked him what was in the trunk, and that he (Kucsma) opened the trunk pursuant to an order from Lieutenant Trantner to do so.

On September 2, 1964, the defendants filed a motion to suppress evidence on the ground that the golf clubs were obtained by an illegal search of the auto in which the defendants were riding.

## Finding of Fact.

A careful analysis of the behavior of the witnesses upon the stand, their manner of testifying, their candor (or lack of candor), and the reasonableness of their story, together with

all the circumstances surrounding their testimony compel the conclusion that Lieutenant Trantner's version of the incident must be accepted as the true version.

THE LAW.

Lieutenant Trantner had been advised by police radio that a South Euclid resident had observed two men take a set of golf clubs from a house on Princeton Boulevard at a late and unusual hour of the night and place the clubs in a bronze-colored Cadillac. Within five or ten minutes after receiving such call, Lieutenant Trantner stopped two men in a bronze-colored Cadillac in the general vicinity of the house from which the clubs had been taken. Under this set of uncontroverted facts— a situation fraught with suspicious circumstances—the right of a South Euclid policeman to stop and question these men is absolutely clear. Lieutenant Trantner was not arresting the defendants, he was merely stopping them to ask them some questions.

The state and federal courts of this country have held on innumerable occasions that stopping a suspicious person to inquire is not an arrest. This well established principle of law has been enunciated in various judicial decisions as follows:

"The stopping of the individual to inquire is not an arrest and the ground upon which the police may make the inquiry may be less incriminating than the ground for an arrest for a crime known to have been committed." *People* v. *Rivera* (1964), 14 N. Y. 2d 441, 201 N. E. 2d 32.

"Our courts in Ohio have on many occasions expressed that a police officer has the right to stop a suspicious person for the purpose of interrogation." *State* v. *Chilton*, 95 Ohio Law Abs. 321, 323 (Judge Bernard Friedman, Court of Common Pleas, Cuyahoga County, Ohio, September 22, 1964).

"In this state, however, we have consistently held that circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning. If the circumstances warrant it, he may in self-protection request a suspect to alight from an automobile or to submit to a superficial search for concealed weapons. Should the investigation then reveal probable cause to make an arrest, the officer may arrest the suspect and conduct a reasonable incidental search. * * *" *People* v. *Michelson* (1963),

59 Cal. 2d 448, 450-51, 380 P. 2d 658, 660, 30 Cal. Rep. 18, 20.

"The courts in various opinions have said that officers in the course of an investigation may ask questions before making an arrest. The narcotics officers were entitled to ask "Jap" Palmer, the known addict, if he was still using narcotics, and then make an effort to induce him to inform them as to his source of supply. * * *" *Green* v. *U. S.* (1958), 259 F. 2d 180.

Lieutenant Trantner was alone at the time he stopped the defendants to interrogate them. He said or did nothing to intimidate them or place them in fear; therefore, when the defendant Kucsma voluntarily opened the trunk so that Lieutenant Trantner could observe its contents, he was freely consenting to the search of his car.

Just a few years ago the Court of Appeals of Hamilton County, Ohio, in *State* v. *Lett* (1961), 114 Ohio App. 414, clearly enunciated the proposition of law that an individual may waive his constitutional rights by voluntarily consenting to an illegal search.

"However, it is a general principle of law that one may voluntarily consent to an illegal search and seizure and thereby waive his constitutional rights in that regard. In 47 American Jurisprudence, 547, Section 71, it is stated:

" 'In accord with the general principle permitting an individual to waive constitutional provisions intended for his benefit, the constitutional right to be secure in person and effects against unreasonable search and seizure may be waived. * * *,

* * *

" 'And, in 48 Ohio Jurisprudence 2d, 746, Section 12, it is stated:

" ' 'An officer may search premises without a warrant if it is done with the owner's consent or if the owner assists in conducting the search. The fact that a search warrant was based upon an insufficient affidavit is immaterial where the officers did not enter the building in question by reason of the search warrant, but were admitted by the occupant, and a suspected person waived his constitutional rights by telling the officers to search him and his car if they so desired as he had nothing illegal in his possession. * * *,

"Upon the stipulation of facts on the record here, we are of

the opinion that it clearly appears the defendant voluntarily and expressly invited and agreed to a search. * * *" 114 Ohio App. 420, 421.

In *State* v. *McPeak* (1955), 243 N. C. 243, 90 S. E. 2d 501, the Supreme Court of North Carolina stated as follows in a case wherein the factual situation was very similar to the case at bar:

"In the case at bar there was no display of force or firearms, no promises, no threats, no coercion of any kind. Howell told McPeak he would like to search his car, but he told him 'he didn't have to let us search his car, if he didn't want to.' McPeak said, 'Well, there's nothing on the car,' got his switch key, unlocked the car's trunk, raised the lid * * *. We conclude that the acts and language of McPeak constituted a free and voluntary consent on his part to the search of his automobile by the officer, and a waiver on his part of his immunity from an unlawful search."

Since Kucsma voluntarily consented to the search, it is not necessary to consider the following two additional arguments of the prosecution:

1. That there was no search at all in the instant situation since Lieutenant Trantner "— — merely saw what was placed before him in full view" when Kucsma opened the trunk of his car. *Ker* v. *California* (1963), 374 U. S. 23, 43; and

2. That Lieutenant Trantner had the right to search the defendants' car because he had probable and reasonable cause to believe that a felony had been committed

The motion to suppress evidence is overruled.

*Motion overruled.*