OPINION.
{¶ 1} In a single assignment of error, defendant-appellant Gregory Riggins challenges the denial of his motion to suppress evidence obtained in a warrantless and what he claims was a nonconsensual search of his person. After the trial court overruled his motion to suppress, Riggins entered a plea of no contest and was found guilty of possession of cocaine, in violation of R.C. 2925.11(A), a felony of the fifth degree. The principal issue presented on appeal is whether an act or statement that fell short of an unequivocal expression of withdrawal of consent was sufficient to limit or to withdraw Riggins's consent to a search. We hold that it was not, and since the other grounds asserted by Riggins in his challenge to the trial court's denial of his motion to suppress are without merit, we affirm.
 FACTS {¶ 2} In the early evening of March 15, 2003, two Cincinnati police officers, on routine patrol in a residential neighborhood, observed Riggins carrying an open bottle of beer on a public sidewalk. The officers stopped Riggins for the purpose of issuing a citation for a violation of R.C. 4301.62, the state's open-container law, which was punishable as a minor misdemeanor. Riggins provided identification and waited.
 {¶ 3} While Officer McShane remained in the patrol car and prepared the citation, Officer Harper asked Riggins "if he had anything illegal on him." In his testimony at the suppression hearing, Officer Harper admitted that when he had asked the question, he had no reason to suspect that Riggins was engaged in any further criminal activity or presented any risk to the officers' safety. The officer conceded that the open-container violation was "the only thing [he] had," and that if Riggins had not consented to be searched, he would have had no authority to search him.
 {¶ 4} Officer Harper testified that he asked for permission to search as a matter of routine: "I make it a habit of asking most people that I come in contact with, as a consent, as a consensual conversation, I ask if they have anything illegal on them." He admitted that his practice of requesting consent to search was not part of a Cincinnati Police Division policy.
 {¶ 5} Officer Harper testified that, immediately after he had asked if Riggins had anything illegal on him, Riggins reached into his pocket and gave Harper a baggie filled with a small amount of marijuana. Officer Harper handed the baggie to Officer McShane for her to prepare another minor-misdemeanor citation for possession. Officer Harper testified that his experience in two years on the police force had taught him that a suspect did not quickly hand over contraband "unless maybe they have something else on them that they don't want me to find." Officer Harper then asked Riggins "if he had anything else illegal on him and if he minded if [the officer] searched him. He said go ahead. He stated that he had nothing else on him."
 {¶ 6} Officer Harper began a thorough search of Riggins, including patting down the outside of Riggins's clothing and reaching into his pockets. Officer Harper then asked Riggins to sit on the curb and to take off his shoes. Riggins began to comply and then asked, "Why do I have to take my shoes off?" Officer Harper responded, "[T]hat's how I do my searches, that if I search you then I look in your shoes, too." As Riggins proceeded to remove his left shoe, a white powdery substance and a small baggie fell out of the shoe. Riggins attempted to rub the powder into the ground. He threw the baggie containing the remainder of the powder into a neighboring yard. The officer recovered three-tenths of a gram of the powder, which was ultimately determined to be cocaine. The officer then arrested Riggins for possession of cocaine.
 {¶ 7} Riggins's testimony contradicted the officers' testimony at almost every turn. He denied possessing the beer bottle and claimed only to have been collecting litter to place in a trash can. He denied that Officer Harper had ever asked him whether he had any contraband or whether he would consent to a search. Riggins testified that Officer Harper had conducted four searches of his person without asking for consent. Riggins did, however, agree with Officers Harper's and McShane's testimony that, before he had complied with their request, he had asked why he had had to remove his shoes.
 {¶ 8} In argument before the trial court, the defense admitted the legitimacy of Riggins's initial detention for the investigation of the open-container violation. In response to the parties' closing arguments, the trial court indicated that it was focusing its inquiry on whether Riggins had consented to the scope of the search Officer Harper had conducted and whether Riggins had withdrawn that consent. By separate entry, without explanation, the trial court concluded that the search uncovering the cocaine was not illegal and overruled Riggins's motion to suppress.
 {¶ 9} The trial court found Riggins guilty of possession, sentenced him to seven month's incarceration, less time served, and stayed the execution of sentence pending this appeal. Riggins has not challenged either the open-container or the marijuana-possession citations in this appeal. The record does not reflect that Riggins was convicted of either offense, though the citations were included in the evidence adduced at the suppression hearing.
 THE INITIAL STOP FOR A MINOR MISDEMEANOR {¶ 10} Riggins largely concedes that he was lawfully detained for the investigation of the open-container violation. The officers saw Riggins holding a bottle, and Riggins admitted picking up the bottle. A violation of the open-container statute, R.C. 4301.62, is punishable as a minor misdemeanor. While the protections of the Ohio and the federal constitutions against warrantless and unreasonable seizures and searches are generally coextensive, see State v. Robinette, 80 Ohio St.3d 234,245, 1997-Ohio-343, 685 N.E.2d 762, in State v. Brown,99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d, syllabus, the Ohio Supreme Court held that the Ohio Constitution provides a greater protection than the Fourth Amendment "against warrantless arrests for minor misdemeanors." Police officers may briefly detain, but may not conduct a custodial arrest, or a search incident to that arrest, for a minor-misdemeanor offense when none of the R.C. 2935.26
exceptions apply. See State v. Brown, at ¶ 25. Under the facts of the initial stop, a search of Riggins's person was not permissible because none of the statutory exceptions applied. Moreover, the officers did not have a reasonable, articulable suspicion that criminal wrongdoing was afoot to justify a limited investigative search for weapons or contraband See Terry v.Ohio (1968), 392 U.S. 1, 19-20, 88 S.Ct. 1868.
 CONSENT SEARCHES {¶ 11} But police officers do not need a warrant, probable cause, or even a reasonable, articulable suspicion to conduct a search when a suspect voluntarily consents to the search. SeeSchneckloth v. Bustamonte (1973), 412 U.S. 218, 219,93 S.Ct. 2041; State v. Comen (1990), 50 Ohio St.3d 206, 211,553 N.E.2d 640. Consent to a search is "a decision by a citizen not to assert Fourth Amendment rights." Katz, Ohio Arrest, Search and Seizure (2004 Ed.), 341, Section 17:1. In Schneckloth v.Bustamonte, the United States Supreme Court acknowledged the importance of consent searches in police investigations, noting that "a valid consent may be the only means of obtaining important and reliable evidence" to apprehend a criminal.Schneckloth v. Bustamonte, 412 U.S. at 227-228, 93 S.Ct. 2041. The Supreme Court has recently reaffirmed the principle that "[p]olice officers act in full accord with the law when they ask citizens for consent." United States v. Drayton (2002),536 U.S. 194, 207, 122 S.Ct. 2105.
 {¶ 12} Other courts, taking notice of the widespread use of consent searches by police, have acknowledged the risk to our liberties when substantial numbers of citizens, particularly motorists, guilty of no greater offense than a minor misdemeanor, are asked by law enforcement officials for consent to search. SeeState v. Robinette, 73 Ohio St.3d 650, 654, 1995-Ohio-162,653 N.E.2d 695, reversed in Ohio v. Robinette (1996), 519 U.S. 33,117 S.Ct. 417; State v. Carty (2002), 170 N.J. 632, 641,790 A.2d 903 ("Treating all citizens like criminals in order to catch the malefactors among us represents an unwise policy choice, an outlook favoring crime prevention over all of our other values.").
 {¶ 13} Here, Riggins contends (1) that he did not consent to the search, (2) that any consent that he did give was involuntary, and (3) that if he did consent, he limited or withdrew that consent prior to the discovery of the cocaine in his shoe.
 The Test For Voluntariness {¶ 14} To establish the consent exception to the probable-cause and warrant requirements of the federal and Ohio constitutions, the state has the burden of establishing by "clear and positive" evidence that consent was freely and voluntarily given. Bumper v. North Carolina (1968), 391 U.S. 543, 548,88 S.Ct. 1788; State v. Posey (1988), 40 Ohio St.3d 420, 427,534 N.E.2d 61. Whether a consent to search was voluntary or was the product of duress or coercion, either express or implied, is ordinarily a question of fact to be determined from the totality of the circumstances. See Schneckloth v. Bustamonte,412 U.S. at 219 and 248-249, 93 S.Ct. 2041; State v. Chapman (1994),97 Ohio App.3d 687, 691, 647 N.E.2d 504.
 {¶ 15} Important factors for the trial court to consider in determining whether a consent was voluntary include the following: (1) the suspect's custodial status and the length of the initial detention; (2) whether the consent was given in public or at a police station; (3) the presence of threats, promises, or coercive police procedures; (4) the words and conduct of the suspect; (5) the extent and level of the suspect's cooperation with the police; (6) the suspect's awareness of his right to refuse to consent and his status as a "newcomer to the law"; and (7) the suspect's education and intelligence. SeeSchneckloth v. Bustamonte, 412 U.S. at 248-249, 93 S.Ct. 2041; see, also, United States v. Watson (1976), 423 U.S. 411, 424,96 S.Ct. 820; State v. Lattimore, 10th Dist. No. 03AP-467, 2003-Ohio-6829, at ¶ 14; State v. Dettling (1998),130 Ohio App.3d 812, 815-816, 721 N.E.2d 449.
 {¶ 16} It is well settled that "[o]n the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus. This principle applies to suppression hearings as well as to trials. See State v.Fanning (1982), 1 Ohio St.3d 19, 437 N.E.2d 583. Therefore, we defer to the trial court's findings of historical facts concerning voluntariness as long as no clear error appears on the record. See Ornelas v. United States (1996), 517 U.S. 690, 699,116 S.Ct. 1657; see, also, State v. King, 1st Dist. No. 2003-Ohio-1541, at ¶ 17.
 Voluntariness of Riggins's Consent {¶ 17} Here, we cannot say that the trial court erred in concluding that Riggins had twice validly consented to a search by Officer Harper. The trial court expressly stated that it had found the officers' testimony credible, implying that Riggins's assertion that Officer Harper did not seek consent was not believable. See Cincinnati v. Langan (1994), 94 Ohio App.3d 22,27, 640 N.E.2d 200.
 {¶ 18} Riggins was detained in a nonviolent manner, on a public street at 6:00 p.m., during the investigation of a minor misdemeanor. In United States v. Watson, 423 U.S. at 424,96 S.Ct. 820, the Supreme Court held that a suspect who had been arrested and forcibly removed from a restaurant had been capable of giving voluntary consent, even though he had been in custody. "[T]he fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search." Id. Even suspects who are handcuffed may voluntarily consent to a search. See United States v. Crowder (C.A. 6, 1995), 62 F.3d 782, 788.
 {¶ 19} Riggins had been lawfully detained for only a brief period before Officer Harper sought consent to search. The officer made no threats or promises to obtain that consent. And there is no evidence that the ticket-issuing procedure was artificially prolonged to add an impermissible coercive effect to an otherwise lawful detention. See Katz, Ohio Arrest, Search and Seizure, 344, Section 17:2; see, also, State v. Loffer, 2d Dist. No. 19594, 2003-Ohio-4980; State v. Lattimore at ¶ 12.
 {¶ 20} Unlike the defendant in State v. Robinette, Riggins was lawfully detained for the issuance of a citation at the time that he consented to the first search. In State v. Robinette,
because the purpose of the stop — issuing a traffic citation — had been completed before the officer had sought consent to search the defendant's vehicle, the defendant was found to have been unlawfully detained. The Ohio Supreme Court noted that once the original purpose of a stop is completed, the lawful detention is at an end, and any continued detention is illegal.[1]
See State v. Robinette, 80 Ohio St.3d at 241, 1997-Ohio-343,685 N.E.2d 762. The court held that "[o]nce an individual has been unlawfully detained by law enforcement, for his or her consent to be considered an independent act of free will, the totality of the circumstances must clearly demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave." Id. at paragraph three of the syllabus.
 {¶ 21} Where, however, a suspect is lawfully detained when consent is sought, he is not free to leave and the proscriptions of Robinette do not apply. See State v. Dettling,130 Ohio App.3d at 815, 721 N.E.2d 449; see, also, State v. Loffer,
supra; State v. Lattimore at ¶ 12. Here, Riggins was not free to leave at the time that consent was sought. Indeed, he was subject to arrest if he left before receiving the completed citation. See R.C. 2935.26(A)(3).
 {¶ 22} It is ironic that, under Robinette, a person free to leave a police encounter has certain safeguards against suspicionless consent searches, but that for a person unable to leave, police officers need not ensure[2] that the suspect has "the freedom to refuse to answer further questions." Statev. Robinette at paragraph three of the syllabus. While "[a]sking questions is an essential part of police investigations," Hiibelv. Sixth Judicial Dist. Court of Nevada, Humboldt County (2004), ___ U.S. ___, 124 S.Ct. 2451, 2458, a suspect in Riggins's situation is ripe for coercion. This court has long noted that police officers "cannot * * * engage in manipulative practices beyond the scope and purpose of the initial stop and undertake a `fishing expedition' for evidence of a crime." State v. Creech
(June 7, 2000), 1st Dist. No. C-990781 (citations omitted); see, also, State v. Anderson (1995), 100 Ohio App.3d 688, 693,654 N.E.2d 1034 ("These minor traffic stops with accompanying questions which, under any other condition, would carry Fourth Amendment implications, appear as little more than a subterfuge to bypass the rules of search and seizure.").
 {¶ 23} In this case, given the relatively noncoercive nature of the detention, Riggins's immediate response of volunteering the marijuana when first questioned by Officer Harper and his continued cooperation in removing his shoes indicated a level of cooperation with the police inconsistent with coerced behavior. Riggins was coherent and expressive when testifying during the suppression hearing, and in light of his extensive prior criminal history, he was likely aware of the consequences of consenting to a search of his person. See United States v. Watson,423 U.S. 411, 424, 96 S.Ct. 820. In the absence of any evidence of coercion, we hold that the trial court did not err in its finding that Riggins's consent to the two searches of his person had been given freely and voluntarily.
 LIMITING OR WITHDRAWING CONSENT {¶ 24} The true gravamen of Riggins's argument is that even if he did voluntarily consent to a search of his person, Officer Harper exceeded the scope of the consent when he instructed Riggins to remove his shoes, and that Riggins, when he asked why he had to remove them, withdrew his consent. Thus, Riggins argues, the cocaine seized from his shoe was the fruit of an unreasonable search and was inadmissible. See Nardone v. United
States (1939), 308 U.S. 338, 341, 60 S.Ct. 266.
 A Suspect May Limit or Withdraw Consent for a Search {¶ 25} In 1961, this court held in State v. Lett (1961),114 Ohio App. 414, 421, 178 N.E.2d 96, without analysis and without citation to any authority, that "when voluntary consent is given, it may not be countermanded during the search." Although we have often noted a suspect's ability to limit the scope of the consent granted, we have never overruled State v.Lett. See, e.g., State v. Robinson (1995),103 Ohio App.3d 490, 495, 659 N.E.2d 1292; State v. Chapman (1994),97 Ohio App.3d 687, 691, 647 N.E.2d 504.
 {¶ 26} When police officers rely upon consent to justify a warrantless search, they have no more authority than they have been given by the consent. "A suspect may * * * delimit as he chooses the scope of the search to which he consents." Floridav. Jimeno (1991), 500 U.S. 248, 252, 111 S.Ct. 1801. Any search beyond the permitted intrusion would not be based on a voluntary relinquishment of the right to be free from warrantless searches. See State v. Mack (1997), 118 Ohio App.3d 516, 519,693 N.E.2d 821, appeal not allowed (1997), 79 Ohio St.3d 1418,680 N.E.2d 156. And if an individual may limit the scope of his consent to search, he may revoke that consent entirely. See, e.g., UnitedStates v. Drayton, 536 U.S. at 207, 122 S.Ct. 2105; Painter v.Robertson (C.A. 6, 1999), 185 F.3d 557, 567. Of course, an item properly seized prior to the withdrawal of consent is not subject to suppression under the Fourth Amendment.
 {¶ 27} As the state notes, the prevailing rule among Ohio courts is that consent to a search may be limited in time, duration, area, and intensity, or may revoked at any time, even after the search has begun. See Lakewood v. Smith (1965),1 Ohio St.2d 128, 130, 205 N.E.2d 388; State v. Crawford,151 Ohio App.3d 784, 2003-Ohio-902, 786 N.E.2d 83 (2d Dist.); Statev. Mack, 118 Ohio App.3d at 519, 693 N.E.2d 821 (6th Dist.);State v. Rojas (1997), 92 Ohio App.3d 336, 635 N.E.2d 66 (8th Dist.); State v. Arrington (1994), 96 Ohio App.3d 375,645 N.E.2d 96 (12th Dist.). Therefore, we overrule our decision inState v. Lett and hold that consent to a search may not only be limited but may also be revoked at any time, even after the search has begun.
 The Objective-Reasonableness Test {¶ 28} Whether a search is authorized by warrant or by consent, the scope of the search is limited by the terms of its authorization. See Walter v. United States (1980),447 U.S. 649, 656, 100 S.Ct. 2395; see, also, State v. Robinson,103 Ohio App.3d at 495, 659 N.E.2d 1292. Where a suspect places express limitations on the scope of a consensual search, those limitations must be observed. For example, where a suspect tells the police, "The search is over. I am calling off the search," his consent has been revoked. United States v. Dichiarinte,
(C.A. 7, 1971), 445 F.2d 126, 128-29. A suspect may also communicate the limitation of a search by his actions. Where a suspect voluntarily opens his door to the police but then closes the door, barring the officers' progress into his apartment, he has communicated the withdrawal of his consent to the initial intrusion. See State v. Robinson, 103 Ohio App.3d at 495,659 N.E.2d 1292.
 {¶ 29} The scope of an individual's consent is often not as readily discernible and is not to be determined by the subjective belief of the suspect. Rather, "[t]he standard for measuring the scope of a suspect's consent is that of `objective reasonableness' — what would the typical reasonable person have understood by the exchange between the officer and suspect?"Florida v. Jimeno, 500 U.S. at 251, 111 S.Ct. 1801 (citations omitted).
 {¶ 30} The scope of a search is defined by its expressed purpose or by the nature of the object being sought. See id., citing United States v. Ross (1982), 456 U.S. 798,102 S.Ct. 2157; see, also, Hiibel v. Sixth Judicial Dist. Court of Nevada,Humboldt County, ___ U.S. at ___, 124 S.Ct. at 2457-2458. For example, in State v. Crawford, 151 Ohio App.3d 784,2003-Ohio-902, 786 N.E.2d 83, at ¶ 8, a suspect consented to a search of his person "for weapons." The Montgomery County Court of Appeals held that his consent to the officer's retrieval from his pocket, as part of the weapons search of a folded-up paper package containing cocaine, did not extend to the opening of the package once there was no reasonable likelihood that a weapon might be found in it. See id. at ¶ 26.
 {¶ 31} Even if a suspect consents to a search of his person for drugs, reasonableness limits the time, place, and scope of the search. For example, the consent of two suspects to a search in the public area of an airport did not authorize federal agents to immediately reach into the suspect's crotch and feel their genitals. See United States v. Blake (C.A. 11, 1989),888 F.2d 795. Consent to a search for drugs did not reasonably include forcing the suspect from the street into the foyer of a nearby apartment building to administer a manual body-cavity search. SeeHughes v. Commonwealth (2000), 31 Va. App. 447, 524 S.E.2d 155; see, also, Smith v. State (Fla.App. 2000), 753 So.2d 713.
 {¶ 32} Here, after he had handed the marijuana to Officer Harper, Riggins consented to a second search of his person. A reasonable person would have understood that Officer Harper was now seeking consent for a search for more drugs in the areas of his person where drugs were likely to be secreted. See Walter v.United States, supra; see, also, State v. Mattison (2003),352 S.C. 577, 586, 575 S.E.2d 852. It was reasonable to conclude that small amounts of illegal drugs could have been hidden in Riggins's shoes, and thus that his shoes were likely targets of the officer's search. In conducting the search, Officer Harper did not move Riggins from the relatively noncoercive setting of a public sidewalk before conducting the search, and he did not look or reach into private areas of his person. Nor did he forcibly remove Riggins's shoes. As the trial court chose not to believe Riggins's assertion that he had not given his verbal consent to the second search, we hold that a reasonable person would have understood that the scope of the search for drugs included the removal of his shoes.
 No Unequivocal Withdrawal of Consent {¶ 33} Even if the scope of his consent reasonably included the removal of his shoes, Riggins could have withdrawn his consent at any time by an express statement, see, e.g., Painterv. Robertson, 185 F.3d at 567, or by an express act. SeeCommonwealth v. Caputo (2003), 439 Mass. 153, 786 N.E.2d 352;Commonwealth v. Fox (Ky. 2001), 48 S.W.3d 24; State v. Jordan
(Mar. 31, 1995), 2d Dist. No. 94-CA-55 (holding that the defendant withdrew his consent by blocking the police officer's hand from reaching into his pants pocket); see, also, Burton v.United States (D.C.App. 1994), 657 A.2d 741, 746-748
(cataloguing various fact patterns indicating the effective withdrawal of consent).
 {¶ 34} Where a suspect's conduct or statement is ambiguous, however, it becomes more difficult, under the objective-reasonableness standard of Jimeno, for a reasonable person to recognize the withdrawal of consent. The South Carolina Supreme Court held that a suspect's act of merely lowering his hands as a police officer searched his groin area pursuant to a consent search fell far short of the unequivocal act or statement necessary to demonstrate a reasonable withdrawal of consent. SeeState v. Mattison, 352 S.C. at 586-587, 575 S.E.2d 852.
 {¶ 35} The United States Court of Appeals for the Ninth Circuit considered whether a suspect's reluctance to complete a search he had consented to was sufficient to withdraw that consent. See United States v. Brown (C.A. 9, 1989),884 F.2d 1309. Brown, an airline passenger arriving in Los Angeles, had consented to a search of his locked luggage. Brown claimed that the keys were in Ohio. The officers had felt keys in his coat pocket and asked him to produce them. Brown did so, but claimed that the keys would not open his suitcases. When the officers asked Brown if he would accompany them to try the keys in the luggage, he inquired, "Do I have to go?" Id. at 1310-1311. The court concluded that "[a]ny reluctance Brown showed in admitting he was carrying the keys to his luggage was not enough to indicate he had withdrawn his unambiguous statement of consent." Id. at 1312. Thus, the mere reluctance to facilitate a search does not satisfy the objective-reasonableness standard. See, also, Burton v. United States, 657 A.2d at 748.
 {¶ 36} Therefore, a suspect who has voluntarily consented to a search of his person for drugs may effectively withdraw his consent only by unequivocal conduct, in the form of an act, a statement, or some combination of the two, that is inconsistent with the consent previously given, and that, to an objective person, would reasonably communicate the withdrawal of consent. Like the defendant in Brown, Riggins expressed a reluctance to complete the search. That reluctance fell far short of the unequivocal act or statement necessary to demonstrate the reasonable withdrawal of his consent. We hold, therefore, that a reasonable police officer could have concluded, in these circumstances, that Riggins's conduct did not constitute an unequivocal withdrawal of his consent.
 {¶ 37} The assignment of error is overruled. Therefore, the judgment of the trial court is affirmed.
Judgment affirmed.
Hildebrandt, P.J., and Sundermann, J., concur.
[1] Because of the strong "public interest in quelling the drug trade," this lawful detention has been extended to include very brief questioning about whether the defendant is carrying illegal weapons or drugs. State v. Robinette, 80 Ohio St.3d at 241,1997-Ohio-343, 685 N.E.2d 762.
[2] Unlike most requests for a consent search made by federal law enforcement officers, Officer Harper did not inform Riggins that he could refuse or that any evidence he found in the search could be used against him. See Hall, Search and Seizure, (3 Ed.), 510, Section 8.9. Giving this warning weighs heavily in favor of a finding of voluntariness. See id.; see, also, United States v.Mendenhall (1980), 446 U.S. 544, 558-559, 100 S.Ct. 1870.