[Cite as *State v. Shine*, 2016-Ohio-3123.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | **CASE NO. 2015-T-0006** |
| - vs - | : | |
| EZARA SHINE, JR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas.
Case No. 2013 CR 00900.

Judgment: Reversed and remanded.

*Dennis Watkins*, Trumbull County Prosecutor, and *LuWayne Annos*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481-1092 (For Plaintiff-Appellee).

*Michael A. Partlow*, 112 South Water Street, Suite C, Kent, OH 44240 (For Defendant-Appellant).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Ezara Shine, Jr., appeals his conviction for possession of cocaine entered by the Trumbull County Court of Common Pleas. For the following reasons, we reverse and remand the judgment of the trial court.

{¶2} On January 24, 2014, Mr. Shine was indicted on one count of possession of cocaine, a felony of the fifth degree, with a forfeiture specification. On March 18, 2014, Mr. Shine filed a motion to suppress evidence obtained during the arrest. He

argued the initial stop was unlawful and there was no probable cause for the arrest. A hearing was held, where the following relevant facts were adduced.

**{¶3}** Warren City Police Sergeant Gary Riggins of the street crime division testified he was patrolling a high crime area in the city at about 12:00 noon on December 5, 2013. His partner was driving an unmarked police car in which he was a passenger. Officer Riggins was in plain clothes but was wearing a vest clearly indicating "police" across the front and back. His badge was attached near his neck, and his handcuffs were visible.

**{¶4}** Officer Riggins testified he observed Mr. Shine leave from what he suspected to be a vacant home. He testified that vacant homes are crime magnets. Mr. Shine was alone, walking along the sidewalk, carrying a plastic grocery-type bag. Officer Riggins testified he knew it was Mr. Shine. His partner pulled the unmarked car into a driveway into Mr. Shine's path on the sidewalk. Officer Riggins exited the car and said something to the effect of, "Mr. Shine, what's going on with you today?" According to Officer Riggins, Mr. Shine replied "nothing" and volunteered that he "didn't have anything." Mr. Shine then pulled a pair of pants from the bag he was carrying. Officer Riggins told him to put his pants back in the bag. According to Officer Riggins' testimony, the following exchange occurred:

> [Mr. Shine said] '[w]ell, I don't have anything. I don't have anything.' [Officer Riggins] said, 'Well, we want to talk to you about why you're leaving a vacant house over here.' Mr. Shine continued to utter, 'I don't have anything. I don't have anything.' [Officer Riggins said], 'Well, if you don't have anything you don't mind me checking.' Shine said, 'Go ahead.' [Mr. Shine then t]hrew his hands up.

Officer Riggins further testified that Mr. Shine indicated there were other people at the house in response to the assertion that it was vacant.

{¶5} Upon patting his clothes down, Mr. Shine turned his body away from Officer Riggins and took a defensive stance, which made Officer Riggins believe that Mr. Shine was hiding something. Officer Riggins patted down the side of his body positioned toward Officer Riggins without issue, but when Officer Riggins began patting down Mr. Shine's other side, Mr. Shine threw his hands down and knocked Officer Riggins' hands off of him. Officer Riggins tackled Mr. Shine to the ground before he could run away. Mr. Shine was kicking and swinging in an effort to get away until Officer Riggins threatened him with a taser. Officer Riggins placed him in handcuffs. Mr. Shine then stated, "What you're looking for is in my left pocket." Officer Riggins found crack cocaine in his left shirt pocket. On cross-examination, Officer Riggins said he believed that Mr. Shine was free to leave when he first stopped him.

{¶6} Mr. Shine testified and explained that Officer Riggins and his partner aggressively pulled their car into his path while he was walking. He explained Officer Riggins' approach was aggressive based on his body language, and he did not feel free to leave at the time. Upon questioning from Officer Riggins, Mr. Shine told him the house he had just left was not abandoned, and he even offered to take the officers there. Mr. Shine said Officer Riggins asked if he had a gun on his person, and Mr. Shine replied "no." Officer Riggins then took the bag from him and pulled out the pair of jeans. Officer Riggins proceeded to pat him down without his consent. Mr. Shine described turning away from Officer Riggins in order to prevent his discovery of the drugs in his shirt pocket. Officer Riggins then grabbed him, slammed him to the ground,

3

and roughed him up. At that point, Mr. Shine told Officer Riggins about the drugs in his shirt pocket. Mr. Shine testified he knew Officer Riggins was a police officer because he had "dealt with him" approximately 12 years prior and had seen him at the grocery store and playing poker at church. Mr. Shine confirmed on recross-examination that he had two prior felony drug convictions.

{¶7} The trial court denied Mr. Shine's motion to suppress but did not issue a written decision. Mr. Shine was subsequently found guilty following a jury trial.

{¶8} Mr. Shine filed a timely appeal and asserts one assignment of error:

{¶9} "The trial court erred, as a matter of law, in denying the appellant's motion to suppress evidence against him."

{¶10} Mr. Shine's argument consists of two subparts. First, he claims Officer Riggins lacked a reasonable and articulable basis to stop him. Second, he argues his consent to the pat down search was withdrawn when he pushed the officer's hands off of him. To the contrary, the state argues the initial inquiry was a consensual encounter that did not constitute a stop for Fourth Amendment purposes. The state contends that once appellant struck at the officer's hands and went to flee, that provided a reasonable, articulable suspicion that criminal activity was afoot and provided justification to stop and search appellant. Alternatively, it asserts there were sufficient facts to justify the trial court finding the initial inquiry was an investigatory stop.

{¶11} "While the Fourth Amendment of the U.S. Constitution does not explicitly state that the violation of its provisions against unlawful search and seizure will result in suppression of the evidence obtained as a result of the violation, the U.S. Supreme Court held that the exclusion of evidence is an essential part of the Fourth Amendment."

4

*State v. Casey*, 12th Dist. Warren No. CA2013-10-090, 2014-Ohio-2586, ¶29, citing *Weeks v. United States*, 232 U.S. 383, 394 (1914) and *Mapp v. Ohio*, 367 U.S. 643, 649 (1961). "The primary purpose of the exclusionary rule is to remove incentive from the police to violate the Fourth Amendment." *Id.*, citing *State v. Baughman*, 192 Ohio App.3d 45, 2011-Ohio-162, ¶29 (12th Dist.).

**{¶12}** An appellate court's review of a decision on a motion to suppress involves issues of both law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. During a suppression hearing, the trial court acts as trier of fact and sits in the best position to weigh the evidence and evaluate the credibility of the witnesses. *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Accordingly, an appellate court will uphold the trial court's findings of fact provided they are supported by competent, credible evidence. *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). Once an appellate court determines whether the trial court's factual findings are supported by the record, the court then engages in a de novo review of the trial court's application of the law to those facts. *State v. Lett*, 11th Dist. Trumbull No. 2008-T-0116, 2009-Ohio-2796, ¶13, citing *State v. Djisheff*, 11th Dist. Trumbull No. 2005-T-0001, 2006-Ohio-6201, ¶19.

**{¶13}** Crim.R. 12(F) provides, in part, that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." "Essential findings" are defined as the "fundamental or necessary reasons relied upon by the trial court in reaching its final determination on the issue." *Columbus v. Lewis*, 77 Ohio App.3d 356, 361 (1991), citing *State v. Waddy*, 10th Dist. Franklin Nos. 87AP-1159 & 87AP-1160, 1989 Ohio App. LEXIS 4137, *43 (Nov. 2, 1989). In order to invoke the mandatory nature of Crim.R. 12(F), the defendant must specifically request

5

essential findings. *See, e.g., State v. Brown*, 2d Dist. Montgomery No. 24297, 2012-Ohio-195, ¶10, citing *State v. Benner*, 40 Ohio St.3d 301, 317 (1988). "While it is error for the trial court to fail in providing requested findings of fact, it is not prejudicial where the record provides an appellate court with a sufficient basis to review the assignments of error." *Id.* Even when findings of fact are not requested, failure to provide them may still be considered reversible error when the record is not sufficient to facilitate appellate review. *Id.*; *State v. Brandon*, 5th Dist. Muskingum No. CT2014-0039, 2015-Ohio-2072, ¶12; *State v. Pate*, 1st Dist. Hamilton Nos. C-130490 & C-13049212, 2014-Ohio-2029, ¶12 (collecting cases that applied "a sufficient evidence standard" when the record did not contain findings of fact).

**{¶14}** At the hearing on the motion to suppress, the trial court made the following statement on the record: "Based on the evidence presented, the Court finds the testimony of the Defendant not credible. Obviously this was a high crime area. This was a reasonable stop. Anything that was seized, there was probable cause for it." The trial court did not issue findings of fact or any other written decision regarding the motion to suppress.

**{¶15}** Although Mr. Shine did not request findings of fact with regard to the trial court's decision on his motion to suppress, the record does not provide this court with a sufficient basis to allow a full review of Mr. Shine's arguments on appeal. More specifically, we are unable to determine at which point in the encounter the trial court deemed to be "a reasonable stop." The "reasonable stop" might refer to when the officers initially approached Mr. Shine in their vehicle. On the other hand, if the trial court considered the initial approach to be a consensual encounter, the "reasonable

stop" might refer to when Mr. Shine was detained after pulling away during the search of his person. The difference could be significant, as it may affect this court's analysis regarding whether there was a reasonable, articulable basis and regarding the subsequent search of appellant's person.

{¶16} The trial court has failed to provide us with a sufficient basis upon which to determine whether its decision is supported by competent, credible evidence. Mr. Shine's assignment of error is sustained in part. *See Brown* and *Brandon*, *supra*. As a result, we cannot yet reach Mr. Shine's constitutional arguments. *See State v. Chaffin*, 2d Dist. Montgomery No. 24241, 2012-Ohio-634; *State v. Lashuay*, 6th Dist. Wood No. WD-06-088, 2007-Ohio-6365.

{¶17} Although we do not find error on the part of the trial court, its entry is inconclusive and insufficient for our review. We must remand this matter for the trial court to make findings of fact and conclusions of law based on the evidence adduced at the suppression hearing. The trial court must then journalize its clarified decision on Mr. Shine's motion to suppress. *See State v. Gomez*, 9th Dist. Lorain No. 13CA010389, 2014-Ohio-3535. The parties will then be permitted to notice an appeal, if they choose, from the re-filed entry.

{¶18} The judgment of the Trumbull County Court of Common Pleas is hereby reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.


THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.


7

_____

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶19} I respectfully dissent.

{¶20} The crack cocaine seized from appellant should have been suppressed as his Fourth Amendment right to be free from unreasonable searches and seizures was violated.

{¶21} As the majority notes, the trial court did not issue a written decision in this matter, and made the following limited findings on the record: "Based on the evidence presented, the Court finds the testimony of the Defendant not credible. Obviously this was a high crime area. This was a reasonable stop. Anything that was seized, there was probable cause for it." This statement indicates the trial court found this to be an investigatory stop, not a consensual encounter. A consensual encounter would be inconsistent with a determination that it was a "reasonable stop" and that there was "probable cause for it."

{¶22} An encounter with police is considered consensual when "the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free to decline and walk away." *State v. Thornton*, 7th Dist. Mahoning No. 14 CO 19, 2014-Ohio-4011, ¶19, citing *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). Here, two officers pulled their unmarked vehicle directly into appellant's path while he was walking alone on the sidewalk. Officer Riggins, clearly identified as a police officer, got out of the car with his handcuffs visible and inquired as to appellant's intentions. It is not realistic to conclude that a reasonable

8

person would have felt free to leave and ignore Officer Riggins under circumstances that involved the looming presence of multiple officers who made a show of authority by blocking the pathway.

{¶23} The trial court did not specify which portions of appellant's testimony it found not credible. Nevertheless, even considering Officer Riggins' testimony as the only credible account, I do not believe there were legally sufficient grounds to justify the stop and questioning of appellant. According to the record, the stop was based upon Officer Riggins' knowledge of appellant's criminal history and the fact that appellant was seen leaving what appeared to be a vacant home in a high crime area. It is evident from the transcript of the hearing, however, that the officer did not know whether the home was vacant at the time of the stop. Officer Riggins testified the home "appeared to be a vacant home at the time" and his police report indicates appellant exited from "a suspected vacant home."

{¶24} Additionally, Officer Riggins did not testify with any certainty or specificity regarding appellant's criminal history. When asked whether he knew appellant prior to the stop, he merely stated. "I've had other encounters with Mr. Shine, yes." When asked whether he had previously arrested Mr. Shine, he simply responded, "I believe so." No other facts were elicited in this regard from Officer Riggins. It should also be noted that the stop occurred during the day at 12:00 noon. All that remains, therefore, is the fact of a high crime area. Absent more articulable facts, it is well established that a high crime location does not provide legally sufficient grounds for an investigatory stop. *See Brown v. Texas*, 443 U.S. 47, 51-52 (1979); *State v. Starcher*, 7th Dist. Jefferson No. 13 JE 1, 2013-Ohio-5533, ¶19.

9

{¶25} When consent to search one's person is given during an illegal detention, such consent is negated, even if voluntarily given, if it is the product of the illegal detention and not the result of an independent act of free will. *State v. Spain*, 10th Dist. Franklin No. 09AP-331, 2009-Ohio-6664, ¶26. In order for consent to be considered an independent act of free will, the totality of the circumstances must clearly demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave. *Id.* The state must prove by clear and positive evidence that such consent was freely and voluntarily given. *Id.* Again, the fact that the unmarked car was driven into appellant's pathway was a show of authority that would make a reasonable person feel he was not free to leave. Considering the totality of the circumstances, it is clear that appellant's consent was not lawfully given.

{¶26} For the foregoing reasons, I would reverse and vacate the trial court's judgment of conviction and sentence.