[Cite as *State v. Shine*, 2017-Ohio-4240.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**TRUMBULL COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-T-0069** |
| EZARA SHINE, JR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas.
Case No. 2013 CR 00900.

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor; *LuWayne Annos* and *Ashleigh Musick*, Assistant Prosecutors, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481-1092 (For Plaintiff-Appellee).

*Michael A. Partlow*, 112 South Water Street, Suite C, Kent, OH 44240 (For Defendant-Appellant).


TIMOTHY P. CANNON, J.

{¶1}   Appellant, Ezara Shine, Jr., appeals his conviction for possession of cocaine entered by the Trumbull County Court of Common Pleas following our remand order for findings of fact and conclusions of law on appellant's motion to suppress.  For the following reasons, the judgment of the trial court is affirmed.

{¶2}   On January 24, 2014, Mr. Shine was indicted on one count of possession of cocaine, a felony of the fifth degree, with a forfeiture specification.  On March 18,

2014, Mr. Shine filed a motion to suppress evidence obtained during the arrest. He argued the initial stop was unlawful and there was no probable cause for the arrest. A hearing was held, where the following testimony was given.

{¶3} Warren City Police Sergeant Gary Riggins, of the street crime division, testified he was patrolling a high crime area in the city at about 12:00 noon in December 2013. His partner was driving an unmarked police car in which he was a passenger. Officer Riggins was in plain clothes but was wearing a vest clearly indicating "police" across the front and back. His badge was attached near his neck, and his handcuffs were visible.

{¶4} Officer Riggins testified he observed Mr. Shine leave from what he suspected to be a vacant home. He testified that vacant homes are crime magnets. Mr. Shine was alone, walking along the sidewalk, carrying a plastic grocery-type bag. Officer Riggins testified he knew it was Mr. Shine. His partner pulled the unmarked car into a driveway into Mr. Shine's path on the sidewalk. Officer Riggins exited the car and said something to the effect of, "Mr. Shine, what's going on with you today?" According to Officer Riggins, Mr. Shine replied "nothing" and volunteered that he "didn't have anything." Mr. Shine then pulled a pair of pants from the bag he was carrying. Officer Riggins told him to put his pants back in the bag.

{¶5} According to Officer Riggins' testimony, the following exchange occurred: "[Mr. Shine said,] '[w]ell, I don't have anything. I don't have anything.' [Officer Riggins] said, 'Well, we want to talk to you about why you're leaving a vacant house over here.' Mr. Shine continued to utter, 'I don't have anything. I don't have anything.' [Officer Riggins said], 'Well, if you don't have anything you don't mind me checking.' Shine

2

said, 'Go ahead.' [Mr. Shine then t]hrew his hands up." Officer Riggins further testified that Mr. Shine indicated there were other people at the house in response to the assertion that it was vacant.

{¶6} Upon patting his clothes down, Mr. Shine turned his body away from Officer Riggins and took a defensive stance, which made Officer Riggins believe that Mr. Shine was hiding something. Officer Riggins patted down the side of his body positioned toward Officer Riggins without issue, but when Officer Riggins began patting down Mr. Shine's other side, Mr. Shine threw his hands down and knocked Officer Riggins' hands off of him. Officer Riggins tackled Mr. Shine to the ground before he could run away. Mr. Shine was kicking and swinging in an effort to get away until Officer Riggins threatened him with a taser. Officer Riggins placed him in handcuffs. Mr. Shine then stated, "What you're looking for is in my left pocket." Officer Riggins found crack cocaine in his left shirt pocket. On cross-examination, Officer Riggins said he believed Mr. Shine was free to leave when he first stopped him.

{¶7} Mr. Shine testified that Officer Riggins and his partner aggressively pulled their car into his path while he was walking. He explained Officer Riggins' approach was aggressive based on his body language, and he did not feel free to leave at the time. Upon questioning from Officer Riggins, Mr. Shine told him the house he had just left was not abandoned, and he even offered to take the officers there. Mr. Shine said Officer Riggins asked if he had a gun on his person, and Mr. Shine replied "no." Officer Riggins then took the bag from him and pulled out the pair of jeans. Officer Riggins proceeded to pat him down without his consent. Mr. Shine described turning away from Officer Riggins in order to prevent discovery of the drugs in his shirt pocket. Officer

Riggins then grabbed him, slammed him to the ground, and roughed him up. At that point, Mr. Shine told Officer Riggins about the drugs in his shirt pocket. Mr. Shine testified he knew Officer Riggins was a police officer because he had "dealt with him" approximately 12 years prior and had seen him at the grocery store and playing poker at church. Mr. Shine confirmed on recross-examination that he had two prior felony drug convictions.

{¶8} The trial court orally denied Mr. Shine's motion to suppress but did not issue a written decision. Mr. Shine was subsequently found guilty of possession of cocaine following a jury trial.

{¶9} Mr. Shine filed a timely appeal from the entry of conviction, solely challenging the denial of his motion to suppress. *State v. Shine*, 11th Dist. Trumbull No. 2015-T-0006, 2016-Ohio-3123. This court sustained in part Mr. Shine's assignment of error because the trial court failed to provide us with a sufficient basis upon which to determine whether its decision was supported by competent, credible evidence. *Id.* at ¶16. We remanded the matter for the trial court to make findings of fact and conclusions of law based on the evidence adduced at the suppression hearing and to journalize its clarified decision on the motion to suppress. *Id.* at ¶17.

{¶10} On remand, the trial court issued findings of fact and conclusions of law in support of its decision to deny Mr. Shine's motion to suppress. The trial court engaged in a written review of the testimony offered at the hearing on the motion to suppress. It found Mr. Shine's testimony was not credible. The trial court concluded:

> The Contact between Sergeant Riggins and the Defendant began as a consensual encounter. The Defendant granted Sergeant Riggins consent to search his person. During this search, the Defendant engaged in an unprovoked flight from Sergeant Riggins.

4

It was at that point that probable cause to detain and search the Defendant existed.

{¶11} Mr. Shine filed a timely appeal from this entry and asserts one assignment of error for our review:

{¶12} "The trial court erred, as a matter of law, in denying the appellant's motion to suppress evidence against him."

{¶13} The issues before us are whether the trial court's conclusions—that the initial encounter was consensual, that the initial search was consensual, and that the subsequent detention and search of Mr. Shine's person was constitutional—are supported by the record.

{¶14} An appellate court's review of a decision on a motion to suppress involves issues of both law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. During a suppression hearing, the trial court acts as trier of fact and sits in the best position to weigh the evidence and evaluate the credibility of the witnesses. *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Accordingly, an appellate court will uphold the trial court's findings of fact provided they are supported by competent, credible evidence. *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). Once an appellate court determines whether the trial court's factual findings are supported by the record, the court then engages in a de novo review of the trial court's application of the law to those facts. *State v. Lett*, 11th Dist. Trumbull No. 2008-T-0116, 2009-Ohio-2796, ¶13, citing *State v. Djisheff*, 11th Dist. Trumbull No. 2005-T-0001, 2006-Ohio-6201, ¶19.

{¶15} Under the Fourth Amendment, searches and seizures conducted without a warrant based on probable cause are unreasonable unless the search falls within an exception to this requirement. *Katz v. United States*, 389 U.S. 347, 357 (1967). There

5

are three general categories in which encounters between citizens and police officers are classified. The first is a consensual encounter; the second is a brief investigatory stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968); and the third is formal arrest. *State v. Long*, 127 Ohio App.3d 328, 333 (4th Dist.1998) (citations omitted). Each category requires a heightened level of evidence to be valid under the Fourth Amendment.

**{¶16}** "While the Fourth Amendment of the U.S. Constitution does not explicitly state that the violation of its provisions against unlawful search and seizure will result in suppression of the evidence obtained as a result of the violation, the U.S. Supreme Court held that the exclusion of evidence is an essential part of the Fourth Amendment." *State v. Casey*, 12th Dist. Warren No. CA2013-10-090, 2014-Ohio-2586, ¶29, citing *Weeks v. United States*, 232 U.S. 383, 394 (1914) and *Mapp v. Ohio*, 367 U.S. 643, 649 (1961). "The primary purpose of the exclusionary rule is to remove incentive from the police to violate the Fourth Amendment." *Id.*, citing *State v. Baughman*, 192 Ohio App.3d 45, 2011-Ohio-162, ¶29 (12th Dist.).

**Consensual Encounter**

**{¶17}** An encounter with police is considered consensual when "the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free to decline to answer and walk away." *State v. Thornton*, 7th Dist. Columbiana No. 14 CO 19, 2014-Ohio-4011, ¶19, citing *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). No Fourth Amendment rights are invoked with a consensual encounter because there is no seizure. *Florida v. Bostick*, 501 U.S. 429, 434 (1991).

6

**{¶18}** The trial court found that Officer Riggins pulled his unmarked police vehicle into a driveway, exited, and approached Mr. Shine to speak with him. Upon making contact with Mr. Shine, Officer Riggins recognized him from previous encounters and said, "Mr. Shine, what's going on with you today?" Mr. Shine responded, "Nothing, nothing," and then approached Officer Riggins and voluntarily showed him that he was carrying a pair of jeans in the plastic bag. After Officer Riggins looked in the bag and asked Mr. Shine why he was leaving an abandoned house, Mr. Shine volunteered, "I don't have anything, I don't have anything."

**{¶19}** Upon review of the record, and in light of our deference to the trial court's determination that Mr. Shine's testimony was not credible, we determine these factual findings are supported by competent, credible evidence and they support the conclusion that the initial encounter between Mr. Shine and Officer Riggins was consensual. The officers merely approached Mr. Shine on a public sidewalk, engaged him in conversation, and requested information. There is no evidence or credible testimony that a reasonable person in Mr. Shine's position would not have felt free to decline to answer and walk away at that moment.

**Consent to Search**

**{¶20}** "In order for consent to be considered an independent act of free will, 'the totality of the circumstances must clearly demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave.'" *State v. Spain*, 10th Dist. Franklin No. 09AP-331, 2009-Ohio-6664, ¶26, quoting *State v. Robinette*, 80 Ohio St.3d 234 (1997), paragraph three of the syllabus.

The state must prove by clear and positive evidence that such consent was freely and voluntarily given. *Id.* (citations omitted).

**{¶21}** The trial court found that Officer Riggins asked Mr. Shine if he would consent to a "pat-down" search. Mr. Shine responded by throwing his hands in the air, saying, "Go ahead."

**{¶22}** Upon review of the record, and in light of our deference to the trial court's determination that Mr. Shine's testimony was not credible, we determine these factual findings are supported by competent, credible evidence and they support the conclusion that Mr. Shine consented to a pat-down search of his person. The totality of the circumstances demonstrates that a reasonable person in Mr. Shine's position would believe he had the freedom to refuse consent to the pat-down search at that moment. There is no evidence or credible testimony that Mr. Shine's consent was not freely and voluntarily given.

**Investigatory Stop**

**{¶23}** "'To justify an investigatory detention, a law enforcement officer must "demonstrate specific and articulable facts which, when considered with the rational inferences therefrom, would, in light of the totality of circumstances, justify a reasonable suspicion that the individual who is stopped is involved in illegal activity."'" *State v. Ball*, 11th Dist. Trumbull No. 2009-T-0013, 2010-Ohio-714, ¶16, quoting *State v. Woodgeard*, 5th Dist. Fairfield No. 01CA50, 2002-Ohio-3936, ¶36, quoting *State v. Correa*, 108 Ohio App.3d 362, 366 (6th Dist.1995). Probable cause is defined in terms of those facts and circumstances sufficient to warrant a prudent law enforcement officer in believing that a

8

suspect committed or was committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (citations omitted).

{¶24} The trial court found that as Officer Riggins began the pat-down search, Mr. Shine turned to the side in a manner the officer believed indicated Mr. Shine was trying to hide something. Officer Riggins began searching that far side of Mr. Shine's person. Mr. Shine then jerked his hands down, knocked the officer's hands away, and began to run. Officer Riggins caught Mr. Shine by the back of his pants and, with the help of another officer, wrestled Mr. Shine to the ground. Eventually, Mr. Shine stopped resisting and said, "What you're looking for is in my left pocket." The officers checked Mr. Shine's pocket and found several baggies of what later tested positive for crack cocaine.

{¶25} Upon review of the record, and in light of our deference to the trial court's determination that Mr. Shine's testimony was not credible, we determine these factual findings are supported by competent, credible evidence. The question that remains is whether these facts support a conclusion that Mr. Shine simply withdrew his consent to the search of his person or that Mr. Shine engaged in an unprovoked flight that provided the officers with reasonable suspicion or probable cause to detain him.

{¶26} "Consent to a search may be limited in scope or revoked at any time, even after the search has begun." *State v. McCree*, 12th Dist. Butler Nos. CA2010-02-029 & CA2010-02-030, 2011-Ohio-1993, ¶13, citing *State v. Riggins*, 1st Dist. Hamilton No. C-030626, 2004-Ohio-4247, ¶27.

> Therefore, a suspect who has voluntarily consented to a search of his person for drugs may effectively withdraw his consent only by unequivocal conduct, in the form of an act, a statement, or some combination of the two, that is inconsistent with the consent

9

previously given, and that, to an objective person, would reasonably communicate the withdrawal of consent.

*Riggins*, *supra*, at ¶36.

{¶27} Flight from a consensual encounter unequivocally communicates the withdrawal of consent to a search. "But unprovoked flight is simply not a mere refusal to cooperate." *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). "Flight, by its very nature, is not 'going about one's business'; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning." *Id.* Thus, courts have held that, in consideration with other factors, flight can also justify a further investigatory stop. *See, e.g., State v. Banks*, 10th Dist. Franklin Nos. 09AP-1087 & 09AP-1088, 2010-Ohio-5714, ¶43-44 ("[o]nce appellant chose to abruptly terminate his consensual interview with police by means of flight, the arresting officers were justified in the initiating [sic] a valid stop under *Terry*"); *State v. Moyer*, 10th Dist. Franklin No. 09AP-434, 2009-Ohio-6777, ¶21-22 (during a consensual encounter in a high-crime area, "[f]light at the initiation of a warrant check [is] probative of reasonable suspicion"); *State v. Hull,* 11th Dist. Ashtabula No. 2003-A-0068, 2005-Ohio-2526, ¶13 (unprovoked flight from police during consensual encounter, coupled with the location of the encounter, constituted reasonable suspicion to justify the investigatory stop).

{¶28} Here, after initially granting consent to search his person, Mr. Shine physically engaged the officers and attempted to run away from them. This unequivocal act, under the circumstances, amounts to more than merely withdrawing his consent to the search. Coupled with his presence in a high crime area, Mr. Shine's flight was also

10

sufficient to justify a reasonable suspicion that he was involved in illegal activity. The cocaine found as a result of the valid investigatory stop provided probable cause for his arrest.

{¶29} Mr. Shine's sole assignment of error is without merit.

{¶30} The judgment of the Trumbull County Court of Common Pleas, overruling Mr. Shine's motion to suppress, is hereby affirmed.

THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶31} I dissent for the reasons enumerated in my prior dissent. *State v. Shine*, 11th Dist. Trumbull No. 2015-T-0006, 2016-Ohio-3123, ¶19-26.

{¶32} I find the majority's original opinion, as well as its rubber-stamp of the outcome in this case, a distinction without a difference and an exercise in futility. The trial court's regurgitation of the language and findings in our prior remand, without adding any additional evidence, or without further hearing, is an act of futility and a waste of its time and ours. More importantly, its decision is still based upon evidence that is insufficient to overcome the state's burden to demonstrate sufficient probable cause to stop and search the defendant under the Fourth Amendment.

{¶33} Respectfully, I stand by my earlier dissent.

11